UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
TERESA LARA BENAVIDEZ, et al.,            :

          Plaintiffs,            :

                        :            09 Civ. 5076 (THK)

     -against-            :

                        :

PLAZA MEXICO INC. et al.,            :

                        :

          Defendants.            :

------------------------------------X
------------------------------------X
GUILLERMO PAEZ, et al.,            :

          Plaintiffs,            :

                        :            09 Civ. 9574 (THK)

     -against-            :

                        :

PLAZA MEXICO INC. et al.,            :

                        :

          Defendants.            :

------------------------------------X

**MEMORANDUM OPINION AND
ORDER**

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

These consolidated actions were brought by employees of the
Defendant Mama Mexico restaurants for wage and overtime violations
of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"),
the New York Labor Law, N.Y. Labor Law § 1 et seq. ("NYLL"), and
the New Jersey Wage and Hours Law, N.J. Stat. Ann. § 34 et seq.
("NJWHL").  Presently before the Court is Plaintiffs' motion for
partial summary judgment, pursuant to Rule 56 of the Federal Rules
of Civil Procedure, which has not been opposed.  For the reasons

that follow, Plaintiffs' motion is granted.[1]

## BACKGROUND

Plaintiffs Teresa Lara Benavidez, Maria de Lourdes Galvez, Jamie Huerta, and Flora Zurita filed a collective and class action complaint alleging violations of the FLSA, NYLL, and NJWHL, against Defendants Plaza Mexico Inc., Piramides Mayas Inc., Mama Mexico Midtown Realty LLC, Juan Rojas Campos, Vincente Rojas, and Miguel Rojas (collectively "Defendants"), on behalf of themselves and all servers, runners, bussers, bartenders, and other tipped food service workers ("Front-of-the-House Workers") employed at the three "Mama Mexico" restaurants in the New York metropolitan region.[2]  Plaintiffs Guillermo Paez, Emiliano Espinoza, and Pedro Nasario filed a class and collective action complaint against Defendants Plaza Mexico, Inc., Piramides Mayas, Inc., Mama Mexico Midtown Realty LLC, Shaddai Inc., Mama Mexico Englewood Realty LLC, Juan Rojas Campos and Laura Chavez, on behalf of themselves and all cooks, dishwashers, and other kitchen workers ("Back-of-the-House Workers") in the three Mama Mexico restaurants, for wage and overtime violations of the FLSA, NYLL, and NJWHL.  The cases have

---

[1] The parties consented to proceed before this Court for all purposes, including trial, pursuant to 28 U.S.C. § 636(c).

[2] One restaurant is in Midtown Manhattan, the other is located on the Upper West Side of Manhattan, and the third is located in New Jersey.

been treated as related and, for all practical purposes, have been consolidated.

Defendant Plaza Mexico, Inc. filed for Chapter 11 bankruptcy on December 24, 2009, and, on Plaintiffs' motion, the debtor corporation was severed from this action without prejudice, and the case proceeded against the non-debtor Defendants. On October 6, 2010, Plaintiffs filed a Third Amended Complaint on behalf of the Front-of-the-House Workers and a First Amended Complaint on behalf of the Back-of-the-House Workers, which eliminated the claims against the debtor-Defendant.[3] Answers were filed on behalf of the remaining Defendants and Plaintiffs then undertook documentary discovery as well as depositions. On Plaintiffs' motion, the Court authorized the provision of notice to potential collective members, and, in response to the Notice, thirty-five individuals joined the lawsuit. (See Declaration of Rachel Bien in Support of Plaintiffs' Motion for Partial Summary Judgment ("Bien Decl.") ¶ 13.)[4] Plaintiffs then made known their intention to move for partial

---

[3] A Stipulated Order was entered on March 16, 2010 tolling the statute of limitations for claims under the FLSA from March 4, 2010 until settlement negotiations reached an impasse. On November 2, 2011, the Court set the schedule for the briefing of the instant motion, having been advised that settlement negotiations had terminated. Thus, the statute of limitations was tolled from March 4, 2010 until approximately November 2, 2011.

[4] A total of seventy-one Plaintiffs have now opted into this action.

summary judgment, in response to which Defendants' counsel  moved
to withdraw from representing Defendants.  The Court granted the
motion and, in its November 2, 2011 Order, advised the corporate
Defendants that they were required to retain new counsel by no
later than December 5, 2011 or they would default in this action.
To date, counsel has not entered an appearance on behalf of any of
the Defendants.

   On December 16, 2011, Plaintiffs filed their motion for
partial summary judgment, to which there has been no response.
Plaintiffs' motion seeks summary judgment solely on liability as to
certain Defendants.  Specifically, Plaintiffs contend that the
undisputed record shows that: (1) Defendants Piramides Mayas Inc.,
Shaddai Inc., and Juan Rojas Campos ("Rojas Campos") willfully
failed to pay Plaintiffs overtime, spread-of-hours pay, and
statutory uniform maintenance payments; (2) the same Defendants
failed to reimburse Plaintiffs for the cost of required uniforms
and failed to give Plaintiffs notice of the tip credit, as required
by Section 203(m) of the FLSA; and (3) Defendant Rojas Campos, Mama
Mexico's owner, is individually liable as Plaintiffs' employer.
Plaintiffs further contend that Defendants Piramides Mayas Inc.,
Shaddai Inc., Mama Mexico Midtown Realty LLC, and Mama Mexico
Englewood Realty LLC are in default because they are not

4

represented by counsel.[5]

## DISCUSSION

I.   Summary Judgment on Plaintiff's Claims

   A.   Legal Standard

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); Patterson v. Cnty. of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 98 (2d Cir. 2003).  The burden of demonstrating the absence of any genuine dispute as to a material fact rests upon the party seeking summary judgment, see Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970), but once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to make a sufficient showing to establish the essential elements of that party's case on which it bears the burden of proof at trial. See Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d

---

[5] Plaintiffs are not moving for summary judgment with respect to Defendants Mama Mexico Realty LLC, Mama Mexico Englewood Realty LLC, and Laura Chavez at this time.  Instead, with respect to the corporate Defendants, they contend that they are in default.

Cir. 2003) (citing <u>Celotex</u>, 477 U.S. at 322, 106 S. Ct. at 2552).

A summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986) (citations omitted). The nonmoving party may not rest on its pleadings and rely on mere allegations, denials, conclusory statements, or conjecture to create a genuine issue for trial. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514 (1986); <u>Hick v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010); <u>Guilbert v. Gardner</u>, 480 F.3d 140, 145 (2d Cir. 2007). Rather, it must point to competent evidence in the record that creates a dispute as to a material fact. Facts may be set forth in affidavits, but "[a]ffidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" <u>Patterson</u>, 375 F.3d at 219 (quoting Fed. R. Civ. P. 56(e)). Thus, hearsay and conclusory assertions which would not be admissible at trial cannot serve to create a genuine issue for trial.

These standards pertain even where, as here, a motion for summary judgment is unopposed. As the Second Circuit has stated:

6

> [T]he failure to oppose a motion for summary judgment
> alone does not justify the granting of summary judgment.
> Instead, the district court must still assess whether the
> moving party has fulfilled its burden of demonstrating
> that there is no genuine issue of material fact and its
> entitlement to judgment as a matter of law.

Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241,
244 (2d Cir. 2004); see also Amaker v. Foley, 274 F.3d 677, 681 (2d
Cir. 2001) (explaining that where the non-moving party "chooses the
perilous path of failing to submit a response to a summary judgment
motion, the district court may not grant the motion without first
examining the moving party's submission to determine if it has met
its burden of demonstrating that no material issue of fact remains
for trial"); Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 618
(S.D.N.Y. 2008) ("[W]here a party against whom summary judgment is
sought fails entirely to respond to the motion, the court need
ensure only that the averments in the movant's Rule 56.1 statement
are supported by evidence and show an absence of a genuine issue
for trial."); Layachi v. Minolta Business Sys., Inc., No. 00 Civ.
0731 (DLC), 2001 WL 1098008, at *3 (S.D.N.Y. Sept 18, 2001)
(explaining that where "nonmoving pro se party has failed to submit
papers in opposition, summary judgment should not be granted
automatically") (internal quotation marks and citations omitted).
In reviewing the motion, therefore, this Court "may not rely solely
on the statement of undisputed facts contained in the moving

7

party's Rule 56.1 statement.   It must be satisfied that the citation to evidence in the record supports the assertion." <u>Vermont Teddy Bear</u>, 373 F.3d at 244 (citation omitted).

In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.   See <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2513; <u>McClellan v. Smith</u>, 439 F.3d 137, 144 (2d Cir. 2006); <u>Patterson</u>, 375 F.3d at 219.

**II. Established Facts**

The following facts, set forth in Plaintiff's Local Civil Rule 56.1 Statement, have not been disputed and are supported by evidence in the record.   Accordingly, they are deemed to be admitted for purposes of these actions. See Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

A. <u>Failure to Pay Overtime, Spread-of-Hours Pay, and Uniform-Related Pay</u>

8

Plaintiffs are seventy-one Front- and Back-of-the-House service workers who worked at three Mama Mexico restaurants, two in New York and one in New Jersey. Piramides Mayas Inc. is the corporate owner of the Mama Mexico location at 214 East 49th Street in Manhattan. (See Bien Decl., Exhibit ("Ex.") H.) Piramides Mayas employed or jointly employed the Plaintiffs who worked at the East 49th Street location, and is the entity listed on payroll checks issued to Plaintiffs who worked at the 49th Street location. (See id. Ex. F.) Shaddai Inc. is the corporate owner of the Mama Mexico restaurant in New Jersey. (See id. Ex. I.) Shaddai employed or jointly employed the Plaintiffs who worked at the New Jersey restaurant, and is the entity identified on the payroll checks issued to Plaintiffs who worked at the New Jersey location. (See id. Ex. G.) Rojas Campos is Mama Mexico's founder and has been its 100% owner throughout the period covered by the Complaints. (See id. Ex. C ¶ 70; Ex. D ¶ 51; Ex. J. (Deposition of Laura Chavez, dated Nov. 2, 2010 ("Chavez. Dep.") at 123).) Throughout the relevant period Rojas Campos had the authority to hire managers and other employees of Mama Mexico, and he exercised that authority. (See id. Ex. C ¶ 71; Ex. D ¶ 52; Chavez Dep. at 193-195; Ex. K (Deposition of Leonardo Vidals, dated Oct. 27, 2010 ("Vidals Dep.") at 19-20, 132-33, 136-37).) Rojas Campos also regularly visited the Mama Mexico restaurants, managed their operations, and reviewed

9

their payroll and tax records. (See id. Ex. C ¶¶ 72-73; Chavez Dep. at 72-73, 191-93; Vidals Dep. at 134-35.)   He signed company checks, including employee paychecks and company tax returns, and decided how and whether Mama Mexico employees would be paid. (See Chavez Dep. at 72, 139-40.)

During the FLSA Covered Period (May 29, 2006 to December 31, 2009), Mama Mexico had no system for recording the hours that its employees worked. (See Chavez Dep. at 73, 83-84; Vidals Dep. at 180-81.)   During the Covered Period, Defendants did not pay Plaintiffs overtime premium pay for the hours they worked over 40 hours in a workweek. (See Chavez Dep. at 83.)   Similarly, during the Covered Period, Defendants did not pay Plaintiffs spread-of-hours pay on days when they worked more than 10 hours.[6] (See id. at 86-87.)   Instead, Defendants paid Front-of-the-House Workers at a flat weekly rate of $184.00 for working five shifts, plus $30.00 in cash for each additional shift of that workweek. (See Chavez Dep. at 70-73; Vidals Dep. at 67-68, 153, 163.)   Defendants paid Back-of-the-House Workers a fixed salary that did not depend on the actual hours that they worked. (See Chavez Dep. at 74-75; Bien Decl. Ex. Q (Declaration of  Obdulio Rosines, dated July 7, 2010

---

[6] Under New York law, if an employee works more than ten hours in a day, she is entitled to an additional hour's wages for "spread of hours."

("Rosines Decl.") ¶ 4); Ex. R (Declaration of Florentino Saldana, dated July 1, 2010 ("Saldana Decl.") ¶¶ 4, 6).)    Plaintiffs regularly worked workweeks of more than 40 hours and days of more than 10 hours without being paid overtime or spread-of-hours pay. (See Bien Decl. Ex. L (Declaration of Maria de Lourdes Vasconez Alarcon, dated Nov. 23, 2009 ("Alarcon Dep.") ¶¶  6-8); Ex. M (Declaration of Theresa Lara Benavidez, dated Dec. 1, 2009 ("Benavidez Decl.") ¶¶ 6-8); Ex. N (Declaration of Jamie Huerta, dated Dec. 16, 2009 ("Huerta Decl.") ¶¶ 6-8); Ex. O (Declaration of Esteban Nader, dated Nov. 19, 2009 ("Nader Decl.") ¶¶ 6-8); Ex. P (Declaration of Adriana Reyes, dated Nov. 4, 2009 ("Reyes Decl.") ¶¶ 7-10); Rosines Decl. ¶¶ 4-6; Saldana Decl. ¶¶ 3-6.)

Defendants required Front-of-the-House Workers to wear a uniform that included a white shirt, black pants or a skirt,  an apron, and a bow-tie called a "corbatin."  Plaintiffs purchased their uniforms with their own money and were not reimbursed for the expense. (See Alarcon Decl. ¶¶ 18-19; Benavidez Decl. ¶¶ 16-17; Huerta Decl. ¶¶ 18-19; Nader Decl. ¶¶ 14-15; Reyes Decl. ¶¶ 17-18.) Various Plaintiffs estimated the cost they incurred in purchasing uniforms at between $105.00 and $195.00 for an apron and corbatin. (See id.)  In addition, Defendants did not pay Plaintiffs the costs they incurred in maintaining and laundering their uniforms.  (See id.)

11

B. Notice of the Tip Credit

During the Covered Period, Defendants failed to notify Front-of-the-House Workers that they would be paid less than the full minimum wage, that tips would make up for the difference, or that they would be entitled to retain all of the tips that they earned. (See Chavez Dep. at 203-06; Vidals Dep. at 85.)

C. Willfulness

Defendants took no steps to determine whether their overtime and other employee pay practices were appropriate under the FLSA and state law until the New York State Department of Labor investigated Mama Mexico in or around March of 2009. (See Chavez Dep. at 71- 73.) It was only after the Labor Department began its investigation that Mama Mexico managers consulted counsel about the lawfulness of their pay practices.  At that time, counsel helped issue and implement manuals, policies, and procedures that conformed with federal and state law. (See id. at 75-78.)  During the Covered Period, Defendants did not have a policy or practice of training its managers in the requirements of the New York Labor Law or FLSA. (See Vidals Dep. at 98-99.)  When Rojas Campos asked Chavez to get involved in reviewing the Mama Mexico pay policies, in or around March of 2009, he was aware that he owed his employees unpaid wages. (See Chavez Dep. at 59-61.)

**III. Legal Conclusions**

12

A. <u>Substantive Violations</u>

The FLSA, as well as New York and New Jersey law, mandate that employees be paid one and one-half times their regular hourly rate of pay for any hours over forty that the employees work in a workweek. <u>See</u> 29 U.S.C. § 207(a)(1); <u>Grochowski v. Phoenix Const.</u>, 318 F.3d 80, 87 (2d Cir. 2003); N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 146-1.4 (2012); N.J. Stat. Ann. § 34:11-56a4 (West 2011). New York law also provides that employers must pay an additional rate for spread of hours, which entitles an employee to "one additional hour of pay at the basic minimum hourly rate" for each day that the workday lasts over ten hours. <u>See</u> 12 NYCRR § 146-1.6. Moreover, under New York law, "[w]here an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday." <u>See</u> <u>id.</u> § 146-1.8. Similarly, in New Jersey, employers are required to compensate their employees for the cost of uniforms. <u>See</u> N.J. Admin. Code § 12:56-17(c)(2011) ("If uniforms are required which are not appropriate for street wear or use in other establishments, the employer shall pay for the cost of such uniforms"). Finally, in New York, where an employer does not maintain required uniforms for employees, it is required to reimburse the employee for the maintenance of the uniforms, except in limited circumstances such as where the uniforms consist of wash and wear materials or where

13

the uniforms may be routinely washed and dried with other personal garments and do not require ironing or dry cleaning. See 12 NYCRR § 146-1.7.

The record establishes that Defendants violated these statutory requirements because, although Plaintiffs regularly worked workweeks of over 40 hours and workdays of more than 10 hours, Defendants failed to pay overtime, spread-of-hours pay, and uniform-related pay, including reimbursement for purchasing and maintaining uniforms.

Under the FLSA, employers may pay tipped employees less than the minimum wage required if, among other things, they "notify employees of the law regarding minimum wages and of the employer's intention to take the tip credit. . . ." Nicholson v. Twelfth St. Corp ., No. 09 Civ. 1984 (HB), 2010 WL 1780957, at *2 (S.D.N.Y. May 4, 2010) (citing Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048(GEL), 2007 WL 313483, at *14 (S.D.N.Y. Feb. 1, 2007) and Chung v. New Silver Palace Rest., 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002)); see also  29 U.S.C. § 203(m).  Similarly, under New York law, an employer may take a tip credit and pay employees a reduced minimum wage if, among other things, the employer has notified the employee of its intention to take the tip credit. See 12 NYCCRR ¶¶ 146-1.3, 146-2.2.

It is undisputed that Defendants failed to inform Plaintiffs of

14

the minimum wage laws, their relation to the tip credit, and of their intention to take a tip credit. Defendants, therefore, are not eligible to avail themselves of the tip credit. Accordingly, Plaintiffs are entitled to damages consisting of the difference between the full FLSA minimum wage rate and the reduced hourly wage they were paid because of the tip credit, or the difference between the full minimum wage rate that applied in the state in which they worked (New York or New Jersey) and the reduced hourly wage they were paid because of the tip credit. See Paz v. Piedra, No. 09 Civ. 03977(LAK)(GWG), 2012 WL 121103, at *9 (S.D.N.Y. Jan. 12, 2012) (Report and Recommendation, adopted on February 1, 2012); Chan, 2007 WL 313483, at *19.

B. Willfulness

Defendants' violations of the law were willful. "The accepted standard for determining willful behavior . . . [is] 'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999) (citing McLaughlin v. Richland Shoe Co., 468 U.S. 128, 133, 108 S. Ct. 1677, 1681 (1988)); accord Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009). To be willful the conduct must be voluntary, deliberate, and intentional, and not merely negligent. See McLaughlin, 486 U.S. at 133, 108 S. Ct. at 1681.

> If an employer acts reasonably in determining its legal
> obligation, its action cannot be deemed willful . . . .
> If an employer acts unreasonably, but not recklessly, in
> determining its legal obligation, then, although its
> action would be considered willful under petitioner's
> test, it should not be so considered under . . . the . .
> . standard we approve today.

Id. at 135 n. 13, 108 S. Ct. at 1682 n. 13.

Here, Defendants have not disputed that their conduct was willful. Moreover, Chavez has conceded that prior to a Department of Labor investigation in or around March of 2009, Rojas Campos never looked for advice on how to properly run the payroll. He did not maintain any system for recording the hours that employees worked, and, therefore, had no system to determine their proper pay. In addition, he never trained his managers on the requirements of the overtime, minimum wage, or tip laws. Rojas Campos's conduct, as the owner of three thriving restaurants, reflected at least a reckless, if not intentional, disregard of the overtime and tip requirements of the FLSA and various state laws.

Because Defendants' conduct was willful, under the FLSA a three-year statute of limitations applies to Plaintiffs' claims. See 29 U.S.C. § 255(a). The New York statute of limitations for minimum wage and overtime claims is six years, see N.Y. Lab. Law §§ 198(3), 663(3), and the analogous New Jersey statute of limitations is two years, see N.J. Stat. Ann. § 34:11-56a25.1.

C. Liquidated Damages

16

Because Defendants' conduct was willful and objectively unreasonable, Plaintiffs are entitled to liquidated damages under both the FLSA and New York law.[7]

The FLSA provides that an employer who violates the minimum wage or overtime provisions of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); see also Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008). Liquidated damages under the FLSA "are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." Herman, 172 F.3d at 142 (citation omitted). District courts may, in their discretion, deny liquidated damages "where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its acts or omissions did not violate the FLSA." Barfield, 537 F.3d at 150 (internal quotation marks and citation omitted). As the Second Circuit has observed, however, "the employer bears the burden of establishing, by plain and substantial evidence, subjective good

---

[7] The New Jersey Wage and Hours Law does not provide for liquidated damages. See N.J. Stat. Ann. § 34:11-56a25.1.

17

faith and objective reasonableness . . . . The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception." Reich v. Southern New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks and citations omitted).

Defendants have made no attempt to show that they acted in good faith, nor could they, as they took no steps to ascertain the requirements of the FLSA and then comply with them. See Barfield, 537 F.33d at 150. Thus, Plaintiffs are entitled to liquidated damages under the FLSA, equal to the amount of their actual FLSA damages.

Plaintiffs also seek liquidated damages under New York law. Under the law in effect when this action was filed, and during the Covered Period, the New York Labor Law provided:

> In any action instituted upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee . . ., upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.

N.Y. Labor Law § 198(1-a).[8] The Second Circuit has recognized "that the NYLL's willfulness standard does not appreciably differ from the

---

[8] In April of 2011, the New York Wage Theft Prevention Act ("WTPA") became effective. It provides for liquidated damages equal to 100% of the improperly withheld wages and tips. See New York Labor Law § 198(1-a) (McKinney 2011).

FLSA's willfulness standard." Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011) (internal quotation marks and citation omitted). However, the purpose of liquidated damages under the New York Labor Law differs from that under the FLSA. The liquidated damages provided for under New York law are punitive in nature. See, e.g., Reilly v. NatWest Mkts. Group, Inc., 181 F.3d 253, 265 (2d Cir. 1999); Carter v. Frito-Lay, Inc., 74 A.D.2d 550, 551, 425 N.Y.S.2d 115, 115 (1st Dep't 1980). Because they serve different purposes, liquidated damages under both statutes may be awarded. See Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635 (LAK)(JCF), 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011) (Report and Recommendation, adopted on May 24, 2011); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008). But see Paz, 2012 WL 121103, at *12 ("The Court concludes that an employee is not entitled to recover liquidated damages under both statutes. Liquidated damages under both statutes compensate [ ] the exact same harm — namely, the harm caused by the defendant's culpable state of mind.") (internal quotation marks and citation omitted).

The record establishes, and Defendants do not dispute, that as with the FLSA, Defendants willfully violated New York law because, at a minimum, they were reckless in their disregard of the wage laws. Defendants have not claimed or offered any evidence of a good faith attempt to comply with the New York wage statutes.

19

Accordingly, Plaintiffs are also entitled to liquidated damages under the New York Labor Law.

The question arises, however, as to whether Plaintiffs are entitled to the 25% liquidated damage measure of the law in effect during the Covered Period, or the more recently enacted law providing for liquidated damages equal to 100% of the unpaid wages. Not surprisingly, Plaintiffs argue for the latter. Although one state court has found the newly enacted statute to be retroactive, see Ji v. Belle World Beauty, Index No. 603228/2008, Decision and Order, dated Aug. 24, 2011 (N.Y. Sup. Ct.) (Solomon, J.), this Court agrees with the reasoning of another Southern District of New York court holding that, in the absence of any indication that the New York legislature intended the WTPA to be retroactive, the presumption against retroactivity has not been overcome. See Wicaksono, 2011 WL 20222644, at *6 n.2; cf. Kuebel, 643 F.3d at 366 (stating that "[p]ursuant to the version of NYLL § 198(1-a) in effect during [employee's] time at [employer], [employee] is entitled to liquidated damages equal to 25% of the total amount of wages due. . . .").

Plaintiffs are therefore entitled to liquidated damages in the amount of 25% of the wages due under New York law.

D. Rojas Campos is Plaintiffs' Employer

Plaintiffs correctly argue that Rojas Campos qualifies under

20

the FLSA as Plaintiffs' employer.

To be held liable under the FLSA, a person must be an employer, which the FLSA defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d).[9]   Courts have consistently viewed the FLSA definition of an employer expansively. See United States v. Rosenwasser, 323 U.S. 360, 363 n. 3, 65 S. Ct. 295 (1945) (examining the legislative history and noting the comments of a senator that the Act's definition of "employ" is "the broadest definition that has ever been included in any one act"); Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) ("[The] definition is necessarily a broad one in accordance with the remedial purpose of the FLSA"); Herman, 172 F.3d at 139 ("[T]he remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

---

[9] New York's definition of an employer is nearly identical to that of the FLSA. See Paz, 2012 WL 121103, at *5; Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 264 n. 48 (S.D.N.Y. 2008) (citing Jiao v. Chen, No. 03 Civ. 0165(DF), 2007 WL 4944767, at *9, n. 12 (S.D.N.Y. Mar. 30, 2007)).   Similarly, New Jersey's definition of an employer is "virtually identical" to that of the FLSA.   See Rong Chen v. Century Buffet & Restaurant, No. 09 Civ. 1687 (SRC), 2012 WL 113539, at *2 (D.N.J. Jan. 12, 2012); Harris v. Scriptfleet, Inc., No. 11 Civ. 4561, 2011 WL 6072020, at *1 (D.N.J. Dec. 6, 2011).

In determining employer status, "the overarching concern is whether the alleged employer possessed the power to control the workers in question." Herman, 172 F.3d at 139 (citation omitted). Nevertheless, to have the power to control workers "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA. . . ." Id. An "economic reality" test is applied that, among other things, considers whether the person,

> (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

Id. (citation omitted). No one of the four factors standing alone is dispositive; instead, the totality of the circumstances must be considered.[10]

Rojas Campos is the 100% owner of the Mama Mexico restaurants. The record indicates that he personally oversaw Mama Mexico's operations during the Covered Period. He regularly reviewed payroll records and tax returns, and visited the restaurants on at least a

---

[10] Some cases, unlike the instant one, require a determination of whether two entities are joint employers. There, courts have suggested an additional set of factors to be considered. See Zheng, 355 F.3d at 72.

weekly basis to review employees' performance, provide managers with instructions, and monitor customer traffic. He controlled corporate finances. The employees viewed him as "the boss." In addition, Rojas Campos had the power to hire and fire employees, as evidenced by his hiring of Chavez (as a Chief Financial Officer of Mama Mexico) and Vidals (as the Assistant Manager of the midtown-Manhattan location). The record indicates that he controlled Plaintiffs' working conditions by providing instructions to managers, implementing the overtime and pay policies, and deciding when and how much to pay Plaintiffs. He determined Plaintiffs' rate and method of payment, and authorized changes in the method of payment in response to a Department of Labor investigation. He also signed employee paychecks.

Because Rojas Campos satisfies all of the elements of the economic reality test and indisputably possessed the power to control Plaintiffs and their working conditions, Rojas Campos is an employer under the FLSA.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for partial summary judgment is granted.

So Ordered.

23

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: February 14, 2012
       New York, New York

**This Opinion resolves the motions at Docket Entry # 107 in 09
Civ. 5076, and Docket Entry # 41 in 09 Civ. 9574.**