**OUTTEN & GOLDEN LLP**　　　　**FITAPELLI & SCHAFFER, LLP**
Justin M. Swartz　　　　　　　　Joseph A. Fitapelli
Rachel Bien　　　　　　　　　　Brian S. Schaffer
Juno Turner　　　　　　　　　　475 Park Ave South, 12th Floor
3 Park Avenue, 29th Floor　　　　New York, New York 10016
New York, New York 10016　　　　Telephone: (212) 300-0375
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERESA LARA BENAVIDEZ, MARIA DE LOURDES GALVEZ, JAMIE HUERTA, FLORA ZURITA, MARIA DE LOURDES VASCONEZ ALARCON, LABRARMY GARCIA, and ESTEBAN NADER, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　-against-<br><br>PIRAMIDES MAYAS INC., MAMA MEXICO MIDTOWN REALTY LLC, SHADDAI INC., MAMA MEXICO ENGLEWOOD REALTY LLC, JUAN ROJAS CAMPOS, and LAURA CHAVEZ,<br><br>　　　　　　Defendants. | 09 CIV 5076 (THK) |
| GUILLERMO PAEZ, EMILIANO ESPINOZA, and PEDRO NASARIO, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　-against-<br><br>PIRAMIDES MAYAS INC., MAMA MEXICO MIDTOWN REALTY LLC, SHADDAI INC., MAMA MEXICO ENGLEWOOD REALTY LLC, JUAN ROJAS CAMPOS and LAURA CHAVEZ,<br><br>　　　　　　Defendants. | 09 CIV 9574 (THK) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF DAMAGES, ATTORNEYS' FEES, AND COSTS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL HISTORY ......................................................................... 1

ARGUMENT ........................................................................................................................... 4

I.      PLAINTIFFS ARE ENTITLED TO RECOVER THEIR UNPAID MINIMUM
WAGES, OVERTIME, SPREAD OF HOURS PAY, AND UNIFORM-
RELATED EXPENSES ................................................................................................. 4

      A.     The Front-of-the-House Plaintiffs Are Entitled to Recover the
Difference Between the Full Minimum Wage and the
Tip Credit Rate .................................................................................................. 5

      B.     Plaintiffs Are Entitled to Unpaid Overtime. .............................................. 5

      C.     Plaintiffs Are Entitled to Spread of Hours Pay. ......................................... 6

      D.     Plaintiffs Are Entitled to Uniform-Related Expenses. ............................... 6

      E.     Plaintiffs Are Entitled to Liquidated Damages. .......................................... 6

      F.     Plaintiffs Are Entitled to Prejudgment Interest. ......................................... 6

      G.     The Court Should Award Damages to the Non-Testifying Plaintiffs
Based on Representative Evidence. ............................................................. 7

II.     PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS ......... 10

      A.     Plaintiffs' Requested Hourly Rates Are Reasonable. .............................. 10

           1.     Plaintiffs Prosecuted the Case Successfully and Efficiently
Despite Several Challenging Circumstances. .............................. 11

           2.     Plaintiffs' Counsel Have Significant Experience, Good
Reputations, and Proven Ability to Successfully Prosecute
Wage and Hour Cases. ................................................................... 13

3.    Plaintiffs' Counsel Charges Clients the Hourly Rates They Seek.................................................................. 15

4.    Awards in Similar Cases and Market Rates in this District Support Plaintiffs' Requested Rates. ........................................... 16

5.    Previous Awards to Counsel Support Their Requested Rates. ..... 17

6.    Current Rates Are Appropriate. ................................................... 18

7.    Public Policy Favors Compensating Plaintiffs' Counsel Adequately Because Counsel Undertook Numerous Risks. ......... 19

B.   Plaintiffs' Requested Costs Are Reasonable............................................ 19

C.   The Court Should Permit Plaintiffs to Seek Attorneys' Fees and Costs Through the Conclusion of this Matter.................................................. 20

CONCLUSION.................................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allende v. Unitech Design, Inc.*,
    783 F. Supp. 2d 509 (S.D.N.Y. 2011)........................................................................10

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946) ...................................................................................................4, 5, 7

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) .................................................................................13

*Anthony v. Franklin First Fin., Ltd.*,
    No. 09 Civ. 5578, 2012 WL 546668 (S.D.N.Y. Feb. 21, 2012) .............................18

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty.*
    *Bd. of Elections*,
    522 F.3d 182 (2d Cir. 2008).............................................................................10, 11, 15

*Barbour v. City of White Plains*,
    788 F. Supp. 2d 216 (S.D.N.Y. 2011)........................................................................16

*Benavidez v. Plaza Mexico, Inc.*,
    Nos. 09 Civ. 5076, 09 Civ. 5974, 2012 WL 500428 (S.D.N.Y. Feb. 15, 2012)............. passim

*Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite*,
    970 F. Supp. 348 (S.D.N.Y. 1997)............................................................................17

*Bianco v. Erkins*,
    284 B.R. 349 (S.D.N.Y. 2002)..................................................................................17

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
    190 F. Supp. 2d 407 (E.D.N.Y. 2002) .....................................................................17

*Blum v. Stenson*,
    465 U.S. 886 (1984)...................................................................................................11

*Brock v. Norman's Country Mkt., Inc.*,
    835 F.2d 823 (11th Cir. 1988) ....................................................................................8

*Campos v. Goode*,
    No. 10 Civ. 0224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ...........................14

*Cao v. Wu Liang Ye Lexington Rest., Inc.*,
    No. 08 Civ. 3725, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010)..............................5

*Clark v. Ecolab Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
11, 2010) ..........................................................................................................................14

*Damassia v. Duane Reade, Inc.*,
Nos. 04 Civ. 08819, 06 Civ. 02295, 2009 WL 5841128 (S.D.N.Y. July 27, 2009) ...............13

*deMunecas v. Bold Food LLC*,
No. 09 Civ. 00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .........................................14

*Donovan v. Burger King Corp.*,
672 F.2d 221 (1st Cir. 1982) ....................................................................................................9

*Empire Healthchoice, Inc. v. Philip Morris, Inc.*,
393 F.3d 312 (2d Cir. 2004) ...................................................................................................17

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003) ........................................................................................................8

*Gusman v. Unisys Corp.*,
986 F.2d 1146 (7th Cir. 1993) .................................................................................................15

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .......................................................................................................20

*Herman v. Hector I. Nieves Transp., Inc.*,
91 F. Supp. 2d 435 (D.P.R. 2000) .............................................................................................8

*In re Indep. Energy Holdings PLC*,
No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................17

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011).............................................14

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ...................................................................................................11

*Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*,
706 F.2d 1205 (11th Cir. 1983) ...............................................................................................18

*Karic v. Major Auto. Cos., Inc.*,
799 F. Supp. 2d 219 (E.D.N.Y. 2011) .....................................................................................14

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)............................................14

*Konits v. Valley Stream Cent. High Sch. Dist.*,
350 F. App'x 501 (2d Cir. 2009) .............................................................................................18

*LeBlanc-Sternberg v. Fletcher,*
  143 F.3d 748 (2d Cir. 1998).........................................................................18, 20

*Lewis v. Triborough Bridge & Tunnel Auth.,*
  No. 97 Civ. 0607, 2001 WL 1898318 (S.D.N.Y. Aug. 6, 2001) ............................20

*Lilly v. Cnty. of Orange,*
  910 F. Supp. 945 (S.D.N.Y. 1996)...........................................................................15

*Lovaglio v. W&E Hospitality Inc.,*
  No. 10 Civ. 7351 (S.D.N.Y. Mar. 12, 2012).............................................................14

*Malletier v. Apex Creative Int'l Corp.,*
  687 F. Supp. 2d 347 (S.D.N.Y. 2011)......................................................................17

*Marshall v. Mammas Fried Chicken, Inc.,*
  590 F.2d 598 (5th Cir.1979) .......................................................................................8

*Martin v. Selker Bros., Inc.,*
  949 F.2d 1286 (3d Cir. 1991).......................................................................................8

*Matheson v. The Glazier Group, Inc.,*
  09 Civ. 4212, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)....................................13

*McMahon v. Olivier Cheng Catering and Events, LLC,*
  No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ............................14

*Meriwether v. Coughlin,*
  727 F. Supp. 823 (S.D.N.Y. 1989)...........................................................................15

*Missouri v. Jenkins,*
  491 U.S. 274 (1989).....................................................................................................18

*Mitchell v. Metropolitan Life Insurance Co.,*
  No. 01 Civ. 2112, 2003 WL 25914312 (S.D.N.Y. Nov. 6, 2003) ...........................17

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
  No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...........................13

*Norwest Fin., Inc. v. Fernandez,*
  121 F. Supp. 2d 258 (S.D.N.Y. 2000).......................................................................15

*Perdue v. Kenny A. ex rel. Winn,*
  130 S. Ct. 1662 (2010)................................................................................................10

*Perez v. Westchester Cnty. Dep't of Corr.,*
  587 F.3d 143 (2d Cir. 2009).......................................................................................20

*Prasker v. Asia Five Eight LLC,*
    No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)................................19

*Reich v. N. Eng. Telecomms. Corp.,*
    121 F.3d 58 (2d Cir. 1997)........................................................................5, 7, 9

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.,*
    818 F.2d 278 (2d Cir. 1987)......................................................................19

*Reiter v. Metro. Transp. Auth. of N.Y.,*
    No. 01 Civ. 2762, 2004 WL 2072369 (S.D.N.Y. Sept. 10, 2004).........................15

*Reiter v. MTA N.Y. City Transit Auth.,*
    457 F.3d 224 (2d Cir. 2006)......................................................................15

*Reyes v. Altamarea Group LLC,*
    No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011).........................14

*Rozell v. Ross-Holst,*
    576 F. Supp. 2d 527 (S.D.N.Y. 2008)...................................................15, 17, 18

*Salomon v. Adderley,*
    No. 11 Civ. 6043, 2012 WL 716197 (S.D.N.Y. Mar. 6, 2012) ...........................14

*Sand v. Greenberg,*
    No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)...............................19

*Santa Fe Natural Tobacco Co. v. Spitzer,*
    No. 00 Civ. 7274, 2002 WL 498631 (S.D.N.Y. Mar. 29, 2002) .........................17

*Schultz v. Capital Int'l Sec. Inc.,*
    466 F.3d 298 (4th Cir. 2006) ....................................................................8

*Sewell v. Bovis Lend Lease, Inc.,*
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)....................13, 14

*Skold v. Am. Int'l Gr.,*
    No. 96 Civ. 7137, 1999 WL 405539 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324
    (2d Cir. 2000)......................................................................................17

*Smith v. Lowe's Home Ctrs., Inc.,*
    236 F.R.D. 354 (S.D. Ohio 2006) ...............................................................8

*Tamazzoli v. Sheedy,*
    804 F.2d 93 (7th Cir. 1986) ......................................................................15

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..........................................................17

*Ting Yao Lin* v. *Hayashi Ya II, Inc.*,
    No. 08 Civ. 6071, 2009 WL 289653 (S.D.N.Y. Jan. 30, 2009)............................................6, 7

*U.S. Dep't of Labor v. Cole Enters., Inc.*,
    62 F.3d 775 (6th Cir. 1995) ........................................................................................8

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local
    307* v. *G&M Roofing & Sheet Metal Co., Inc.*,
    732 F.2d 495 (6th Cir. 1984) ...................................................................................19

*Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*,
    No. 00 Civ. 2474, 2001 WL 1842042 (S.D.N.Y. May 30, 2001)............................................17

*Velez v. Novartis Pharm. Corp.*,
    No. 04 Civ. 09194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .......................................16

*Vilkhu v. City of New York*,
    No. 06 Civ. 2095, 2009 WL 1851019 (E.D.N.Y. June 26, 2009), *vacated by* 372 F.
    App'x 222 (2d Cir. 2010) ........................................................................................16

*Weyant v. Okst*,
    198 F.3d 311 (2d Cir. 1999)....................................................................................20

*Willix v. HealthFirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)...........................................14

*Yurman Designs, Inc. v. PAJ, Inc.*,
    125 F. Supp. 2d 54 (S.D.N.Y. 2000)..........................................................................17

**STATUTES**

28 U.S.C. § 1961(a) ........................................................................................................20

29 U.S.C. § 216(b) ........................................................................................................10

29 U.S.C. § 254 ..............................................................................................................4

N.Y. C.P.L.R. § 5001(b) ...................................................................................................7

N.Y. C.P.L.R. § 5004 ......................................................................................................7

N.Y. Lab. Law § 198(1-a)................................................................................................10

## PRELIMINARY STATEMENT

On February 15, 2012, the Court granted Plaintiffs' motion for partial summary judgment on liability, holding that Defendants had a policy of failing to pay overtime, spread of hours pay, and uniform-related expenses and that they unlawfully took advantage of the tip credit provision of Section 203(m) of the Fair Labor Standards Act ("FLSA").  *See Benavidez v. Plaza Mexico, Inc.*, No. 09 Civ. 5076, 2012 WL 500428 (S.D.N.Y. Feb. 15, 2012).  Plaintiffs now move for an award of damages, attorneys' fees, and costs, and for entry of judgment against Defendants Piramides Mayas, Inc., Shaddai, Inc., and Juan Rojas Campos.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs and opt in Plaintiffs ("Plaintiffs") are eighty servers, runners, bussers, bartenders, dishwashers, and cooks, who worked at three Mexican restaurants called "Mama Mexico" in New York City and New Jersey between May 29, 2003 and December 31, 2009.

Plaintiffs Teresa Lara Benavidez, Maria De Lourdes Galvez, Jamie Huerta, and Flora Zurita filed a class and collective action complaint against Defendants Plaza Mexico Inc., Piramides Mayas Inc., Mama Mexico Midtown Realty LLC, Juan Rojas Campos, Vincente Rojas, and Miguel Rojas on May 29, 2009, on behalf of themselves and all tipped, hourly food service workers ("Front-of-the-House Plaintiffs").  ECF No. 1.[1]  Plaintiffs Guillermo Paez, Emiliano Espinoza, and Pedro Nasario filed a class and collective action complaint against Defendants Plaza Mexico, Inc., Piramides Mayas, Inc., Mama Mexico Midtown Realty LLC, Shaddai Inc., Mama Mexico Englewood Realty LLC, Juan Rojas Campos, and Laura Chavez on

---

[1]     Because Plaintiffs filed their cases as related matters, citations to the Docket herein will be to Matter No. 09 Civ. 5076, unless otherwise indicated.  Plaintiffs amended their complaint on August 17, 2009, eliminating claims for sexual harassment and pregnancy discrimination under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 *et seq.*  ECF No. 9.

1

behalf of themselves and all cooks, dishwashers, and other kitchen workers ("Back-of-the-House Plaintiffs") on November 18, 2009.  ECF No. 1 (No. 09 Civ. 9574).

On December 24, 2009, Plaza Mexico, Inc. filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York.[2]  On August 6, 2010, Plaintiffs moved to sever Plaza Mexico, Inc. without prejudice pending the bankruptcy and for an order permitting them to proceed against the non-debtor Defendants.  ECF No. 64.  On October 1, 2010, the Court granted Plaintiffs' motion.  ECF No. 74.

Plaintiffs served discovery requests on November 30, 2009, in response to which Defendants produced payroll records, employee policies, employee schedules, and Defendants' tax returns.  Declaration of Rachel Bien ("Bien Decl.") ¶ 18.  Plaintiffs also took the depositions of Defendant Laura Chavez and Leonardo Vidals, a general manager who worked at all three Mama Mexico locations, in October and November 2010.  *Id.* ¶ 19.  During the course of the litigation, Plaintiffs interviewed dozens of class members and obtained declarations from approximately 44 Plaintiffs.  *Id.* ¶ 20.

Settlement negotiations began in earnest beginning in or around November 2010.  *Id.* ¶ 21.  After several months of negotiation, the parties agreed to a monetary amount and drafted a detailed settlement agreement.  *Id.*  In or around April 2011, after Defendants' obligation to begin funding the settlement was to have commenced, Defendants informed Plaintiffs that they would be unable to meet their monetary obligations.  *Id.* ¶ 22.  Plaintiffs' further attempts to engage in settlement discussions with Defendants have not been successful.  *Id.*

Following the breakdown in settlement negotiations, Plaintiffs promptly returned to litigation.  On June 21, 2011, Plaintiffs submitted a proposed notice pursuant to Section 216(b)

---

[2]     None of the other entities or individuals sued as Defendants in this case has filed for bankruptcy.

of the FLSA to the Court, which the Court approved on June 29, 2011.  ECF No. 83.  On August

5, 2011, a claims administrator mailed the notice to 479 potential collective members.  Bien

Decl. ¶ 24.  In response to the notice, 36 additional individuals joined the case by returning their

Consent to Join forms.  *Id.*

On August 2, 2011, Plaintiffs requested a status conference to discuss the next steps in

the litigation.  *Id.* ¶ 25.  On August 8, 2011, the Court held a telephonic conference, during which

Plaintiffs informed the Court that they anticipated moving for summary judgment.  *Id.*  The

Court instructed Plaintiffs to outline the claims on which they intended to move in an effort to

potentially streamline the motion and eliminate issues with respect to which Defendants

acknowledged liability.  *Id.*  Despite several admissions by Defendants' C.F.O., Laura Chavez,

Defendants refused to concede liability on any issue, requiring Plaintiffs to brief all of them in

their summary judgment motion.  *See id.* ¶ 26 & Ex. A (letter from J. Meyer to R. Bien, dated

Oct. 7, 2011).

Plaintiffs moved for summary judgment on December 16, 2011 on behalf of all Plaintiffs

and opt-ins.  ECF No. 107.  Defendants did not respond to the motion.  Bien Decl. ¶ 27.  On

February 15, 2012, the Court granted the motion, holding that Defendants failed to pay overtime,

spread of hours pay, and statutory uniform maintenance payments, and failed to reimburse their

workers for required uniforms.  *Benavidez*, 2012 WL 500428, at *6.  The Court further held that

Defendants unlawfully availed themselves of the tip credit by failing to provide adequate notice

of the provisions of Section 203(m) of the FLSA, that Plaintiffs were entitled to liquidated

damages under both the FLSA and NYLL for overlapping periods, and that Defendant Juan

Rojas Campos was individually liable as Plaintiffs' employer under the FLSA and NYLL.  *Id.* at

*6-10.

On March 7, 2012, the Court held a telephone conference to discuss the damages phase

of the litigation.  Bien Decl. ¶ 28.  Pursuant to the Court's instructions, on March 15, 2012,

Plaintiffs submitted a letter setting forth a proposed procedure for the determination of damages.

*See* ECF No. 118.  Specifically, Plaintiffs proposed submitting sworn declarations containing

information from which the Court can calculate damages.  *Id*.  With respect to individuals whom

Plaintiffs could not contact or who were otherwise unable to submit declarations, Plaintiffs

proposed that the Court calculate their damages based on the representative evidence contained

in the declarations.  *Id*.  On March 28, 2012, the Court "so ordered" Plaintiffs' proposal, but held

that it would consider at a later date whether live testimony would be necessary.  *Id.*  The Court

further directed Plaintiffs to include information on the number of weeks worked and meal and

break times in their declarations.  *Id*.

## ARGUMENT

### I.  PLAINTIFFS ARE ENTITLED TO RECOVER THEIR UNPAID MINIMUM WAGES, OVERTIME, SPREAD OF HOURS PAY, AND UNIFORM-RELATED EXPENSES.

Plaintiffs seek their unpaid minimum wages, overtime, spread of hours pay, and uniform-

related expenses, all of which the Court held that Defendants failed to pay.  *See Benavidez*, 2012

WL 500428, at *6.  Plaintiffs may establish the amount of damages that they are owed based

upon the testimony set forth in the declarations that Plaintiffs submit with this motion because

Defendants failed to keep adequate time and payroll records.[3]  *See Anderson v. Mt. Clemens*

*Pottery Co*., 328 U.S. 680, 687-88 (1946), *superseded by statute on other grounds by* 29 U.S.C.

§ 254 (where an employer's records are "inaccurate or inadequate," its employees' best estimate

of their unpaid work is entitled to a reasonable inference that may only be rebutted if the

---

[3]      *Benavidez*, 2012 WL 500428, at *4.

employer can "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference"); *see also Reich v. N. Eng. Telecomms. Corp.,* 121 F.3d 58, 66-68 (2d Cir. 1997) (approving award of damages to all employees based on the testimony of a representational sample of employees).  As set forth below, Plaintiffs' declarations are "sufficient evidence to show the amount and extent of the [unpaid] work as a matter of reasonable inference," and should be used as the basis for calculating each Plaintiff's damages.  *See Anderson*, 328 U.S. at 687; *Reich*, 121 F.3d at 66-68.

### A.   The Front-of-the-House Plaintiffs Are Entitled to Recover the Difference Between the Full Minimum Wage and the Tip Credit Rate.

The Front-of-the-House Plaintiffs are entitled to recover the difference between the full minimum wage and the tip credit rate because "Defendants failed to notify [them] they would be paid less than the full minimum wage, that tips would make up for the difference, or that they would be entitled to retain all of the tips that they earned."  *Benavidez*, 2012 WL 500428, at *5. The higher New York or New Jersey minimum wage rate must be used to calculate Plaintiffs' unpaid wages because "[t]he federal minimum wage is intended to be a floor, not a ceiling on the amount an employee is entitled to receive."  *Cao* v. *Wu Liang Ye Lexington Rest., Inc.,* No. 08 Civ. 3725, 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010) (using the higher rate to calculate the plaintiffs' damages for unpaid wages and overtime) (citing 29 U.S.C. § 218(a)). Plaintiffs have summarized their minimum wage damages in Exhibit C to the Bien Decl.[4]  An explanation of the basis for their calculations is set forth in Bien Decl. ¶¶ 33-39.

### B.   Plaintiffs Are Entitled to Unpaid Overtime.

Plaintiffs are entitled to recover unpaid overtime for the hours they worked over forty in a

---

[4]     Plaintiffs will provide an electronic Excel spreadsheet containing all of the calculations underlying the summary contained in **Exhibit C** to the Court for its review.

week because Defendants had a policy of failing to pay overtime.  *Benavidez*, 2012 WL 500428,

at *6.  Plaintiffs have summarized their overtime damages in Exhibit C to the Bien Decl.  An

explanation of the basis for their calculations is set forth in Bien Decl. ¶¶ 40-44.

     **C.**    **Plaintiffs Are Entitled to Spread of Hours Pay.**

    Plaintiffs who worked days of more than 10 hours are entitled to recover unpaid spread of

hours pay because Defendants had a policy of failing to pay spread of hours pay.  *Benavidez*,

2012 WL 500428, at *6.  Plaintiffs have summarized their spread of hours damages in Exhibit C

to the Bien Decl.  An explanation of the basis for their calculations is set forth in Bien Decl. ¶¶

45-49.

     **D.**    **Plaintiffs Are Entitled to Uniform-Related Expenses.**

    Plaintiffs are entitled to reimbursement for the cost of required uniforms and the

Plaintiffs who worked in New York are also entitled to unpaid statutory uniform maintenance

payments.  *See Benavidez*, 2012 WL 500428, at *6.  Plaintiffs have summarized their uniform-

related damages in Exhibit C to the Bien Decl.   An explanation of the basis for their calculations

is set forth in Bien Decl. ¶¶ 50-53.

     **E.**    **Plaintiffs Are Entitled to Liquidated Damages.**

    Because Defendants acted willfully and did not have a good faith basis for their conduct,

Plaintiffs are entitled to liquidated damages under both the FLSA and NYLL.  *Benavidez*, 2012

WL 500428, at *6-9.  Plaintiffs have summarized their liquidated damages calculations in

Exhibit C to the Bien Decl.

     **F.**    **Plaintiffs Are Entitled to Prejudgment Interest.**

    Plaintiffs are entitled to prejudgment interest at a rate of 9 percent per year.  *See Ting Yao*

*Lin* v. *Hayashi Ya II, Inc.*, No. 08 Civ. 6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009)

("The Second Circuit has held that even where a plaintiff is awarded liquidated damages under New York Labor Law, prejudgment interest still is appropriate.") (citing *Reilly* v. *Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); N.Y. C.P.L.R. §§ 5001(b), 5004 (providing for prejudgment interest at the rate of 9 percent "[w]here such damages were incurred at various times, . . . from the date it was incurred or upon all of the damages from a single reasonable intermediate date"); *see also Ting Yao Lin,* 2009 WL 289653, at *7 (finding calculation of prejudgment interest from the midway point of each plaintiff's employment to be an "acceptable" methodology).  Plaintiffs have summarized their interest calculations in Exhibit C to the Bien Decl.

### G.   The Court Should Award Damages to the Non-Testifying Plaintiffs Based on Representative Evidence.

The Court should award damages to the Plaintiffs who did not submit declarations based on the representative evidence set forth in the declarations of 44 Plaintiffs that Plaintiffs submitted.  In class and collective actions, courts routinely award back pay to non-testifying claimants on the basis of evidence adduced from a representational subset.  *See Reich*, 121 F.3d at 67 ("In meeting the burden under *Mt. Clemens*, [plaintiffs] need not present testimony from each underpaid employee; rather, it is well-established that [plaintiffs] may present the testimony from a representative sample of employees as part of [their] proof of the prima facie case under the FLSA").  This proof standard derives from *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in which the U.S. Supreme Court held that plaintiffs need only prove their unpaid work "as a matter of just and reasonable inference." *Id*. at 687.  The standard does not require "complete detail as to the wages lost by each employee." *Reich*, 121 F.3d at 67.

In accordance with this well-established precedent, federal courts routinely award back pay damages to groups of claimants on the basis of representational evidence. *See, e.g.,*

7

*Grochowski v. Phoenix Constr.,* 318 F.3d 80, 88 (2d Cir. 2003) ("[T]he plaintiffs correctly point

out that not all employees need testify in order to prove FLSA violations or recoup back-wages,

[but] the plaintiffs must present sufficient evidence for the jury to make a reasonable inference as

to the number of hours worked by the non-testifying employees."); *Schultz v. Capital Int'l Sec.

Inc.,* 466 F.3d 298, 310 (4th Cir. 2006) ("Courts have, of course, 'frequently granted back wages

under the FLSA to non-testifying employees based upon the representative testimony of a small

percentage of the employees.'") (internal citation omitted); *U.S. Dep't of Labor v. Cole Enters.,

Inc.,* 62 F.3d 775, 781 (6th Cir. 1995) ("The testimony of fairly representative employees may be

the basis for an award of back wages to nontestifying employees."); *Martin v. Selker Bros., Inc.*,

949 F.2d 1286, 1296-98 (3d Cir. 1991) ("It is not necessary for every single affected employee to

testify in order to prove violations or to recoup back wages."); *Brock v. Norman's Country Mkt.,

Inc.,* 835 F.2d 823, 828 (11th Cir. 1988) ("The fact that several employees do not testify does not

penalize their claim; it is clear that each employee need not testify in order to make out a prima

facie case of the number of hours worked as a matter of 'just and reasonable inference.'")

(internal quotation marks omitted); *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 599

(5th Cir.1979) (*per curiam*) ("Although the evidence was not perfectly accurate, it provided a

sufficient basis to calculate the number of hours worked by each employee.") (citations omitted);

*Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 356 (S.D. Ohio 2006) ("It is generally

recognized that, at trial, the testimony of  fairly representative employees may form the basis for

a determination of liability and back wages, even in the absence of testimony from all

employees.") (internal quotation marks omitted); *Herman v. Hector I. Nieves Transp., Inc.*, 91 F.

Supp. 2d 435, 446 (D.P.R. 2000) ("Where . . . plaintiff's proof establishes the presence of

practices in violation of the Act, the existence of the violations as well as an award of backwages may be inferred for employees that do not testify.")

Here, Plaintiffs have submitted testimony from approximately 55% of the Plaintiffs. Those Plaintiffs' declarations set forth sufficient evidence for the Court to make a reasonable inference as to the damages incurred by the 36 non-testifying Plaintiffs. *See, e.g.*, *Reich*, 121 F.3d at 67-68 (citing with approval cases in which courts relied on representative evidence from significantly fewer employees than Plaintiffs rely on here); *see also Donovan v. Burger King Corp.*, 672 F.2d 221, 224-25 (1st Cir. 1982) (testimony of six employees from six restaurants, plus stipulations from 20 others, sufficient to support backpay award to 246 employees at 44 restaurants). The testimony contained in the declarations raises a reasonable inference regarding the extent of hours worked and unpaid wages owed to the non-testifying Plaintiffs because the Plaintiffs who submitted declarations worked in the same positions and under the same wage and hour policies as the non-testifying Plaintiffs. *See Reich*, 121 F. 3d at 68 (representative evidence approved where, *inter alia*, testimony covered each category of worker and violations were the result of policies consistently applied by the employer).

To calculate each non-testifying Plaintiff's damages, Plaintiffs relied both on representative testimony and on the dates of employment contained in Defendants' payroll records. Bien Decl. ¶ 31. Using the representative testimony in light of the payroll records, Plaintiffs calculated the average weekly amount of unpaid wages and multiplied that by the number of weeks worked by each non-testifying Plaintiff. *Id*. In calculating damages for the non-testifying Plaintiffs, Plaintiffs also took into account whether they were employed in New York or New Jersey. *Id*.

II.     **PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS.**

Plaintiffs are entitled to recover their attorneys' fees and costs as the prevailing parties. *See* 29 U.S.C. § 216(b) (authorizing courts to award "a reasonable attorney's fee . . . and costs of the action"); N.Y. Lab. Law § 198(1-a) (requiring courts to award "all reasonable attorney's fees" to prevailing parties). The Court should grant Plaintiffs' request for $504,371.70 in attorneys' fees, a 10% discount from their actual "lodestar" amount of $560,413, because their fees are reasonable. The lodestar method, which Plaintiffs used here, yields a fee that "attracts competent counsel, but does not produce windfalls for attorneys." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008) (referring to the "lodestar" as the "presumptively reasonable fee"). Plaintiffs' lodestar was calculated by multiplying the number of hours worked (which were contemporaneously recorded) by the actual current hourly rate that Outten & Golden LLP ("O&G") and Fitapelli & Schaffer, LLP ("F&S") charge paying clients for that biller's work. Bien Decl. ¶ 56 & Ex. F.  In addition to voluntarily reducing their fees by 10% across the board, Plaintiffs also eliminated approximately 45 hours of time. *Id*. These reductions weigh in favor of granting their requested fees because they account for any possible duplicative billing or excess time. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011) (reducing requested fee award in wage and hour case by 7% and collecting cases with similar reductions between 5 and 10%).

A.     **Plaintiffs' Requested Hourly Rates Are Reasonable.**

The hourly rates that Plaintiffs request are reasonable and appropriate. Courts select an hourly rate by determining what a "reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F. 3d at 184. Rates must be consistent with the prevailing rates in the relevant

geographic area for "lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 & n.11 (1984). Courts consider "all of the case-specific variables that [may be] relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including, but not limited to, the factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). *Arbor Hill*, 522 F.3d at 190. The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3. Courts also frequently consider previous awards to the counsel seeking fees. These factors weigh in favor of awarding Plaintiffs' requested rates.

### 1. Plaintiffs Prosecuted the Case Successfully and Efficiently Despite Several Challenging Circumstances.

The success that Plaintiffs were able to achieve, despite several obstacles discussed below, supports their request for fees. Plaintiffs moved for and were granted summary judgment on behalf of eighty individuals. They also proved that Defendants acted willfully, which significantly increased Plaintiffs' damages, and that Defendant Rojas Campos is individually liable as Plaintiffs' employer, which, among other things, improved the odds for collection. The claims involved complicated legal issues and were fact-intensive. Although Defendants did not oppose Plaintiffs' summary judgment motion, Plaintiffs still bore the burden to prove each claim on behalf of approximately 80 individuals – a significant undertaking.

The time that Plaintiffs spent litigating the case was reasonable and used efficiently.  In particular, Plaintiffs made strategic choices to prosecute the case in a way that would minimize fees.  Bien Decl. ¶ 59.  For example, two associates at O&G, Rachel Bien and Juno Turner, whose hourly rates are relatively low, took the lead on most aspects of the case.  *Id*.  Plaintiffs also routinely delegated tasks to the lowest-billing person who could perform the task well.  *Id*.

Defendants' conduct and other circumstances beyond Plaintiffs' control drove up Plaintiffs' attorneys' fees.  For example, Plaintiffs were required to move to compel discovery after Defendants repeatedly failed to respond to their requests.  *See* Bien Decl. ¶ 18; ECF No. 49.  The parties also engaged in lengthy settlement negotiations resulting in a close to final settlement agreement, which Defendants backed out of at the last minute.  Bien Decl. ¶ 21.  In addition, the absence of adequate records required Plaintiffs to spend significant time combing through what records existed and confirming dates of employment and salary history with Plaintiffs in order to evaluate Plaintiffs' damages, calculate a reasonable settlement amount, and locate individuals for purposes of sending the § 216(b) notice.  *Id*.

When the prospect of settlement dimmed, Plaintiffs promptly returned to litigation and moved for Court-authorized notice to potential opt-ins and for summary judgment.  *Id*. ¶ 23.  Although Plaintiffs attempted to narrow the issues on which they would be required to move for summary judgment by detailing them to Defendants in advance of their filing, Defendants insisted that Plaintiffs move on each issue.  *Id*. ¶ 26 & Ex. A (letter from J. Meyer to R. Bien, dated Oct. 7, 2011).

The bankruptcy filing of Defendant Plaza Mexico, Inc., an unfortunate unforeseen circumstance, also required Plaintiffs to expend time and resources consulting bankruptcy counsel and taking the steps necessary to preserve Plaintiffs' claims in the bankruptcy

12

proceeding.  Bien Decl. ¶ 16.  Specifically, Plaintiffs filed proof of claim forms for 18 Plaintiffs

and opt-ins and a class proof of claim, requiring them to undertake detailed damages calculations

largely in the absence of employee records or other data.  *Id*.  In addition, the bankruptcy and the

circumstances surrounding it, including the temporary closure of the Upper West Side Mama

Mexico location, caused a great deal of confusion and fear among the restaurant's employees and

required Plaintiffs to conduct several group meetings and respond to dozens of telephone calls

from class members to reassure them that their concerns would be addressed and that the case

would move forward.  *Id*. ¶ 17.

> 2.     Plaintiffs' Counsel Have Significant Experience, Good Reputations, and
>        Proven Ability to Successfully Prosecute Wage and Hour Cases.

O&G and F&S have substantial experience prosecuting wage and hour class and

collective actions and enjoy excellent reputations in the field of employment law.  *See*, *e.g.*,

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr.

16, 2012) (approving class action settlement in wage and hour case and finding that O&G

"zealously represented the interests of their clients and provided a high quality of

representation"); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270,

2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("O&G's lawyers have substantial

experience prosecuting and settling employment class actions, including wage and hour class

actions and are well-versed in wage and hour law and in class action law.");[5] *Matheson v. The*

*Glazier Group, Inc.*, 09 Civ. 4212, 2011 WL 6268216, *7 (S.D.N.Y. Dec. 13, 2011) ("Outten &

---

[5]     *See also*, *e.g.*, *Damassia v. Duane Reade, Inc.*, Nos. 04 Civ. 08819, 06 Civ. 02295, 2009
WL 5841128, at *3 (S.D.N.Y. July 27, 2009) (Lynch, J.) (O&G "has substantial experience
prosecuting and settling employment class actions, including wage and hour class actions and are
well-versed in wage and hour law and in class action law"); *Ansoumana v. Gristede's Operating
Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (Hellerstein, J.) (O&G is "experienced and well-
qualified in the fields of labor law and class litigation and, in particular, wage-and-hour class
litigation").

Golden LLP and Fitapelli & Schaffer, LLP have substantial experience prosecuting large-scale wage and hour class and collective actions"); *Lovaglio v. W&E Hospitality Inc.*, No. 10 Civ. 7351 (S.D.N.Y. Mar. 12, 2012) (finding F&S to be "experienced and well-qualified employment lawyers") (Order attached as Exhibit H to the Bien Decl.).

The O&G attorneys who led the prosecution of this case, Rachel Bien and Juno Turner, have prosecuted many wage and hour cases that have resulted in favorable recoveries for hundreds of workers, including *Sewell*, 2012 WL 1320124; *Reyes v. Altamarea Group LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011); *Willix v. HealthFirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011); *Campos v. Goode*, No. 10 Civ. 0224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food LLC*, No. 09 Civ. 00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010); and *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).

Brian Schaffer and Joseph Fitapelli of F&S, also have many years of experience successfully litigating wage and hour cases.  *See, e.g.*, *Salomon v. Adderley*, No. 11 Civ. 6043, 2012 WL 716197, at *3 (S.D.N.Y. Mar. 6, 2012) (granting conditional certification and notice in FLSA action on behalf of cable field technicians); *Karic v. Major Auto. Cos., Inc.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (granting conditional certification and notice in FLSA action on behalf of approximately 150 automotive sales representatives).

14

3.      Plaintiffs' Counsel Charges Clients the Hourly Rates They Seek.

Plaintiffs should recover fees at the rates that their counsel actually charges paying clients. *See Arbor Hill*, 522 F.3d at 184 (in setting the reasonable hourly rate, the district court should consider "what a reasonable, paying client would be willing to pay"). The "usual hourly billing rates charged to paying clients . . . are reasonable rates of compensation for their work in this action." *Meriwether v. Coughlin*, 727 F. Supp. 823, 831 (S.D.N.Y. 1989). Even "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court" because "[l]awyers do not come from cookie cutters." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993); *see also Tamazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm.").

Courts in this district give great weight to counsel's actual hourly rates. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (finding that the actual rates charged to clients is "strong evidence of what the market will bear"); *Reiter v. Metro. Transp. Auth. of N.Y.*, No. 01 Civ. 2762, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004) (noting that "the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate"); *Lilly v. Cnty. of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) (finding that the "actual rate that counsel can command in the market place is evidence of the prevailing market rate").[6]

Here, Plaintiffs' counsel regularly bill their clients at the rates they seek and their clients regularly accept and pay those rates. *See* Bien Decl. ¶ 56. *See Norwest Fin., Inc. v. Fernandez*,

---

[6]      The *Reiter* court reduced the hourly rates awarded because, unlike Plaintiffs here, counsel failed to document its actual hourly rates. The court also relied on the fact that counsel had reduced their typical fees to what their client could afford to pay. This approach was subsequently rejected by the Second Circuit. *See Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006) ("Important public policy considerations dictate that we should not punish an 'under-charging' civil rights attorney.").

121 F. Supp. 2d 258, 262 (S.D.N.Y. 2000) (rejecting challenge to reasonableness of fee request where counsel provided declaration indicating that client was "billed on the basis of services provided at fixed hourly rates which were charged at [counsel's] usual and customary rates").

In some class actions, O&G recovers fees at higher than its current hourly rates where it is awarded fees through the common fund approach.  *Id.* ¶ 61.  Because of the resources devoted to this case over the past two and a half years, O&G turned down other class cases from which it might have recovered a multiplier.  *Id.*  Despite Defendants' perilous financial condition, which increased the likelihood that Plaintiffs' counsel would recover less than their hourly rates and not be compensated for risks they incurred, Plaintiffs' counsel continued to prosecute this case vigorously and spend the resources necessary to prevail.  *Id.* ¶ 62.

               4.     <u>Awards in Similar Cases and Market Rates in this District Support</u>
                         <u>Plaintiffs' Requested Rates.</u>

The rates that Plaintiffs request are in line with attorneys' fee awards in the Southern District of New York.  *See, e.g.,  Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (awarding $625 per hour for an experienced civil rights attorney based on evidence that the rate was "well within the range of hourly rates for attorneys in civil rights cases in the Southern District and Washington, D.C., area"); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194, 2010 WL 4877852, at *22 (S.D.N.Y. Nov. 30, 2010) (accepting hourly rates of $400 to $750 per hour for lodestar crosscheck and noting that the rates were "below the rates charged by firms of [its] caliber (principally defense firms) that litigate frequently in th[e] [Southern] District"); *Vilkhu v. City of New York*, No. 06 Civ. 2095, 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) (finding that "rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time"), *vacated by* 372 F. App'x 222 (2d

16

Cir. 2010) (district court erroneously examined Southern District rates rather than Eastern District rates); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (noting that partner hourly rates of $700 to $750 "fall within the norm of the rates charged by those attorneys' common adversaries in the defense bar"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *9 (S.D.N.Y. Sept. 29, 2003) (noting that rates of $650 per hour for a partner and $300 to $425 per hour for associates are "not extraordinary for a topflight New York City law firm").[7]

     5.    <u>Previous Awards to Counsel Support Their Requested Rates.</u>

Previous awards to O&G and F&S lawyers also support the rates that Plaintiffs request. Almost four years ago, in May 2008, Magistrate Judge Francis awarded O&G over $1 million in fees and costs in a confidential settlement of a sexual harassment suit. *Rozell*, 576 F. Supp. 2d at 546. The Court awarded $600 per hour to O&G partners and of counsel, $350 per hour for senior associates, and $250 per hour for junior associates. *Id.* More than eight years ago, in *Mitchell v. Metropolitan Life Insurance Co.*, No. 01 Civ. 2112, 2003 WL 25914312 (S.D.N.Y. Nov. 6, 2003), Judge Pauley awarded O&G and its co-counsel $3.4 million in fees and costs

---

[7]    *See also, e.g.*, *Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 347, 361-62 (S.D.N.Y. 2011) ($390.10 per hour is reasonable for associate at a mid-size law firm specializing in intellectual property law); *Bianco v. Erkins*, 284 B.R. 349, 352 (S.D.N.Y. 2002) (awarding $535-$595 per hour for partners nine years ago); *Santa Fe Natural Tobacco Co. v. Spitzer*, No. 00 Civ. 7274, 2002 WL 498631, at *9 (S.D.N.Y. Mar. 29, 2002) (awarding $575 per hour for partner nine years ago); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 190 F. Supp. 2d 407, 426 (E.D.N.Y. 2002) (awarding $449-$540 for partners nine years ago), *rev'd on other grounds sub nom. Empire Healthchoice, Inc. v. Philip Morris, Inc.*, 393 F.3d 312 (2d Cir. 2004); *Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, No. 00 Civ. 2474, 2001 WL 1842042, at *7 (S.D.N.Y. May 30, 2001) (awarding $450-$550 per hour for partners ten years ago); *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (awarding $520.69 per hour for a partner over a decade ago); *Skold v. Am. Int'l Gr.*, No. 96 Civ. 7137, 1999 WL 405539, at *7 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324 (2d Cir. 2000) (awarding lead attorney $400 per hour eleven years ago); *Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite*, 970 F. Supp. 348, 351 (S.D.N.Y. 1997) (awarding senior partner $495 per hour fourteen years ago).

including $425 per hour for an O&G partner and a $500 per hour rate for a partner in O&G's co-counsel firm. *Id*. at *3. Judge Pauley found such rates to be reasonable because "they [we]re consistent with the market rates of lawyers with comparable skills, experience and reputations in this community, the Southern District of New York, and nationally among lawyers who litigate complex class action employment cases throughout the country." *Id*. at *2. Similarly, Judge Jones recently awarded F&S $350 per hour for attorneys Brian Schaffer and Joseph Fitapelli. *Anthony v. Franklin First Fin., Ltd.*, No. 09 Civ. 5578, 2012 WL 546668, at *2 (S.D.N.Y. Feb. 21, 2012). In awarding F&S's requested rates, Judge Jones gave "significant weight" to the fact that F&S's clients regularly paid the hourly rates sought. *Id*.

The somewhat higher rates that Plaintiffs now request are justified by the passage of time. *See Rozell*, 576 F. Supp. 2d at 546 (rates awarded to counsel in prior cases "should not necessarily be considered a cap" because attorneys' rates generally increase over time).

### 6.   Current Rates Are Appropriate.

The Court should apply Plaintiffs' counsel's current rates to the time they spent prosecuting this case because current rates (not historic rates) are necessary to compensate counsel for the passage of time. *See Konits v. Valley Stream Cent. High Sch. Dist.*, 350 F. App'x 501, 505 n.2 (2d Cir. 2009) (noting that the district court should have used current rates, not historic rates); *LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"). Historical rates "may convert an otherwise reasonable fee into an unreasonably low one." *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1210 (11th Cir. 1983); *see also Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (use of current rates was warranted

18

because compensation received after services are rendered does not have equivalent dollar value).

       7.    <u>Public Policy Favors Compensating Plaintiffs' Counsel Adequately Because Counsel Undertook Numerous Risks.</u>

Lawyers who prosecute wage and hour cases, especially high-risk, low-reward cases like this one, must be adequately compensated. *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("Attorneys' fees . . . are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."); *Prasker v. Asia Five Eight LLC,* No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) ("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL."); *see also Allende*, 783 F. Supp. 2d at 510 ("the award of attorneys' fees . . . encourages the vindication of Congressionally identified policies and rights"). Adequate compensation is consistent with the FLSA's purpose of eliminating "labor conditions detrimental to the maintenance of the minimum standard living" of workers through private lawsuits and "insur[ing] effective access to the judicial process" by removing the significant barrier of paying legal fees and costs out of pocket. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307* v. *G&M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495, 501-02 (6th Cir. 1984).

    **B.    Plaintiffs' Requested Costs Are Reasonable.**

As prevailing parties under the FLSA and NYLL, Plaintiffs are entitled to "reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)

(internal quotation marks omitted); *see also LeBlanc-Sternberg*, 143 F.3d at 763 (remanding district court's determination not to award plaintiff reasonable out-of-pocket costs). Plaintiffs' litigation costs and disbursements of $22,444.14 are detailed in Exhibit G to the Bien Decl. Plaintiffs are not seeking interest on the costs they incurred in the litigation, although the law provides for interest. *See* 28 U.S.C. §1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

The costs Plaintiffs seek – for depositions, fees charged by the claims administrator who mailed the 216(b) notice, translation services, bankruptcy counsel consultation, legal research, postage, transportation, and working meals – are reasonable and of the type routinely awarded by courts. *See LeBlanc-Sternberg*, 143 F.3d at 763 (holding that expenses such as photocopying, telephone, computerized legal research are recoverable whether as costs or fees); *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (upholding award of costs for service of summons and complaint, postage, copying costs, hotel bills, meals, and messenger service, among other costs); *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 Civ. 0607, 2001 WL 1898318, at *10 (S.D.N.Y. Aug. 6, 2001) (awarding hotel and meal costs and court reporter fees).

### C.   The Court Should Permit Plaintiffs to Seek Attorneys' Fees and Costs Through the Conclusion of this Matter.

Under this Circuit's well-settled precedent, the Court may award Plaintiffs attorneys' fees and costs incurred subsequent to this motion until all aspects of the litigation are completed. *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 156 (2d Cir. 2009) (remanding for district court to determine fees on fees); *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (plaintiffs are entitled to recover fees for post-judgment motions and time spent on fee application). Plaintiffs' time records, current through May 7, 2012, do not include all of the time that will be spent concluding this matter, including time spent collecting the judgment from

20

Defendants and otherwise assisting in administering the judgment.  Plaintiffs respectfully reserve the right to file a supplemental fee application at a later date.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for an award of damages, attorneys' fees, and costs, and enter judgment against Defendants Piramides Mayas, Inc., Shaddai, Inc., and Juan Rojas Campos.


Dated:  May 9, 2012
      New York, New York

Respectfully submitted,

 /s/ Rachel Bien
Rachel Bien

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Juno Turner
3 Park Avenue, 29th Floor
New York NY 10016
(212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
475 Park Ave South, 12th Floor
New York, New York 10016
Telephone:  (212) 300-0375