UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TERESA LARA BENAVIDEZ, MARIA DE LOURDES
GALVEZ, JAMIE HUERTA, FLORA ZURITA,                 :
MARIA DE LOURDES VASCONEZ ALARCON,
LABRARMY GARCIA, and ESTEBAN NADER,                 :
on behalf of themselves and all others similarly situated,     **MEMORANDUM AND ORDER**
                                                    :
            Plaintiffs,                             09 Civ. 5076 (KNF)
                                                    :
            -against-
                                                    :
PLAZA MEXICO, INC., PIRAMIDES MAYAS INC.,           :
MAMA MEXICO MIDTOWN REALTY LLC,                     :
SHADDAI INC., and MAMA MEXICO ENGLEWOOD
REALTY LLC,                                         :

            Defendants.                             :
-------------------------------------------------------------------X
GUILLERMO PAEZ, EMILIANO ESPINOZA, and             :
PEDRO NASARIO, on behalf of themselves and all
others similarly situated,                          :

            Plaintiffs,                             :

            -against-                               :     09 Civ. 9574 (KNF)

PLAZA MEXICO, INC., PIRAMIDES MAYAS INC.,           :
MAMA MEXICO MIDTOWN REALTY LLC,
SHADDAI INC., and MAMA MEXICO ENGLEWOOD :
REALTY LLC,
                                                    :
            Defendants.
-------------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

*Procedural History*

        On May 29, 2009, Teresa Lara Benavidez, Maria de Lourdes Galvez, Jamie Huerta and

Flora Zurita commenced a class action and collective action for unpaid wages and overtime

compensation, pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law

1

("NYLL"), on behalf of themselves and all servers, runners, bussers, bartenders and other hourly food service workers ("front-of-the-house plaintiffs") who have worked at three Mama Mexico restaurants, operated by Plaza Mexico, Inc., Piramides Mayas Inc., Mama Mexico Midtown Realty LLC, Juan Rojas Campos, Vincente Rojas and Miguel Rojas.  On November 16, 2009, Guillermo Paez, Emiliano Espinoza and Pedro Nasario commenced a class action and collective action for unpaid wages and overtime, mainly pursuant to FLSA, NYLL and the New Jersey Labor and Workmen's Compensation Law ("NJLWCL"), on behalf of themselves and all cooks, dishwashers and other kitchen workers ("back-of-the-house plaintiffs") who have worked at three Mama Mexico restaurants, operated by the defendants.

On December 24, 2009, defendant Plaza Mexico, Inc. filed for Chapter 11 bankruptcy protection.  The plaintiffs' subsequent motion for conditional certification of a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for a collective action under the FLSA, was denied, without prejudice, as premature.  The plaintiffs were directed to file a motion to sever Plaza Mexico, Inc., pursuant to Rule 21 of the Federal Rules of Civil Procedure, which was granted, and the assigned district judge stated: "Plaintiffs have 20 days to amend their complaints, without prejudice to reinstating Plaza Mexico as a named defendant, depending on the outcome of the Bankruptcy Court proceedings."  On October 6, 2010, the plaintiffs filed their third-amended complaint in the case bearing Docket No. 09 Civ. 5076 and their first-amended complaint in the case bearing Docket No. 09 Civ. 9574.  The defendants filed their answer. Thereafter, the parties consented to the jurisdiction of a magistrate judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

On June 29, 2011, the magistrate judge authorized the FLSA collective action notice, see Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010), informing any person employed by

2

the Mama Mexico restaurants in New York and New Jersey as a server, busser, runner,

bartender, cook or dishwasher, between May 29, 2006, and December 31, 2009, that if she or he

wishes to join the lawsuits, her or his signed opt-in consent form must be postmarked by "90

days from mailing of the Notice."   The notices to potential plaintiffs were mailed on August 5,

2011, making November 3, 2011, the last day to postmark signed opt-in consent forms to join

the lawsuits.

On November 2, 2011, the magistrate judge granted a motion to withdraw as counsel to

the defendants, stating:

> The corporate Defendant is hereby advised that it may not proceed pro se in this
> action.  Accordingly, unless new counsel files a Notice of Appearance in this action
> by December 5, 2011, a default will be entered against the corporate Defendant.  If
> Plaintiffs still wish to proceed with a summary judgment motion, it shall be filed by
> December 16, 2011.

On December 16, 2011, the plaintiffs filed a motion for partial summary judgment, pursuant to

Rule 56 of the Federal Rules of Civil Procedure, against Piramides Mayas Inc., Shaddai Inc. and

Juan Rojas Campos.  In their notice of motion, the plaintiffs sought an order finding that:

(1) Piramides Mayas Inc., Shaddai Inc. and Juan Rojas Campos "willfully failed to pay overtime,

spread-of-hours pay, and statutory uniform maintenance payments, reimburse them for the cost

of required uniforms, and give notice of the tip credit under Section 203(m) of the Fair Labor

Standards Act"; (2) Juan Rojas Campos is individually liable as the plaintiff's employer; and

(3) Piramides Mayas Inc., Shaddai Inc., Mama Mexico Midtown Realty LLC and Mama Mexico

Englewood Realty LLC "are in default for failing to comply with the Court's November 2, 2011

Order."

On February 15, 2012, the magistrate judge granted the plaintiffs' motion, finding, inter

alia, that: (a) the "Defendants failed to pay overtime, spread-of-hours pay, and uniform-related

pay, including reimbursement for purchasing and maintaining uniforms"; (b) the "Defendants failed to inform Plaintiffs of the minimum wage laws, their relation to the tip credit, and of their intention to take a tip credit"; (c) the defendants' violations were willful; (d) the plaintiffs are entitled to liquidated damages under both FLSA and NYLL; and (e) Juan Rojas Campos is the plaintiffs' employer under FLSA.  Although the magistrate judge noted in a footnote that, "with respect to the corporate Defendants, [the plaintiffs] contend that they are in default," he did not make any determination on that issue.

On May 9, 2012, the plaintiffs made a motion for an award of damages, attorneys' fees and costs against Piramides Mayas Inc., Shaddai Inc. and Juan Rojas Campos.  Thereafter, the cases were reassigned to the undersigned.  The damages inquest hearing was conducted on October 16 and 24, 2012.  On November 30, 2012, the plaintiffs requested that the Clerk of Court "enter the attached Certificate of Default against Defendants Piramides Mayas Inc., Mama Mexico Midtown Realty LLC, Shaddai Inc., and Mama Mexico Englewood Realty LLC."  On the same day, the Clerk of Court entered the default of the "Corporate Defendants,"[1] based on their failure to engage counsel by December 5, 2011.

On March 6, 2013, the Court, seeking clarification, raised certain issues with the plaintiffs, namely: (a) the liability of Mama Mexico Midtown Realty LLC, Mama Mexico Englewood Realty LLC and Laura Chavez; (b) the exact number of opt-in plaintiffs; (c) the status of an opt-in plaintiff, Kevin Santa; and (d) the late opt-in notices.

---

[1]  It appears, based on the plaintiffs' request, that the default against the "Corporate Defendants" for failure to engage counsel by December 5, 2011, was entered against all corporate defendants, including Piramides Mayas Inc. and Shaddai Inc, notwithstanding that the partial summary judgment motion was granted previously against Piramides Mayas Inc. and Shaddai Inc.

On March 13, 2013, the plaintiffs made a motion for judgment by default, pursuant to Rule 55 of the Federal Rules of Civil Procedure, against Mama Mexico Midtown Realty LLC and Mama Mexico Englewood Realty LLC.  On the same date, the plaintiffs submitted a letter to the Court, stating, <u>inter alia</u>, that: (i) the "correct number of Plaintiffs is seventy-four"; (ii) the opt-in plaintiff Kevin Santa was reinstated after he was erroneously terminated; (iii) opt-in consent notices for five plaintiffs should be deemed timely submitted; and (iv) although Juan Chino Vital and Nestor Jose Sanchez Solano did not submit opt-in consent forms timely, the Court should exercise its discretion to extend their filing deadlines.

On March 19, 2013, the plaintiffs made a "Motion to Amend the Complaints to Reinstate Plaza Mexico, Inc. as a Defendant, . . . pursuant to Federal Rules of Civil Procedure 15(a)(2), 20(a)(2), and 21," because the Bankruptcy Court dismissed Plaza Mexico, Inc.'s petition, on March 6, 2013.  Thereafter, the plaintiffs made a motion to dismiss claims against Laura Chavez, "pursuant to Federal Rules of Civil Procedure 21 and 41."

On April 15, 2013, the Court determined that: (a) the fourth-amended complaint, in the case bearing Docket No. 09 Civ. 5076, and the second-amended complaint, in the case bearing Docket No. 09 Civ. 9574, supersede the third-amended complaint, in the case bearing Docket No. 09 Civ. 5076, and the first-amended complaint, in the case bearing Docket No. 09 Civ. 9574; (b) the February 15, 2012 Memorandum and Opinion, granting partial summary judgment to the plaintiffs, based on the superseded complaints, is void; and (c) the plaintiffs' motions for judgment by default, to dismiss claims against Laura Chavez and for an award of damages, attorney's fees and costs, are moot.  The plaintiffs' motion for reconsideration of the April 15, 2013 determination was denied.

Thereafter, the front-of-the-house plaintiffs filed their fourth-amended complaint, in the

case bearing Docket No. 09 Civ. 5076, and the back-of-the-house plaintiffs filed their second-amended complaint, in the case bearing Docket No. 09 Civ. 9574, against Plaza Mexico, Inc., Piramides Mayas Inc., Mama Mexico Midtown Realty LLC, Shaddai Inc., and Mama Mexico Englewood Realty LLC, asserting violations of FLSA, New York law and New Jersey law, in connection with the work the plaintiffs performed at three Mama Mexico restaurants located at: (i) 2672 Broadway, New York, New York; (ii) 214 East 49th Street, New York, New York; and (iii) 464 Sylvan Avenue, Englewood Cliffs, New Jersey.  On January 9, 2014, the Clerk of Court entered a default against all the defendants, for failing to answer or otherwise move with respect to the amended complaints.

Before the Court is the plaintiffs' motion for judgment by default, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  The front-of-the-house plaintiffs seek damages for unpaid minimum wages, overtime compensation, spread of hours, costs associated with purchasing and maintaining uniforms and liquidated damages.  The back-of-the-house plaintiffs seek damages for unpaid overtime compensation and liquidated damages.  The plaintiffs also seek post-judgment interest, at the rate authorized by 28 U.S.C. § 1961(a), $331,445.40 in attorneys' fees and $12,721.37 in costs.

***Plaintiffs' Contentions***

Judgment by Default

The plaintiffs contend that a judgment by default should be granted because the defendants failed to answer or otherwise move with respect to the amended complaints. According to the plaintiffs, their fourth-amended complaint alleges that the defendants had a policy or practice of: (1) failing to pay the front-of-the-house plaintiffs minimum wages for all hours worked; (2) failing to pay the front-of-the-house plaintiffs overtime compensation for all

hours worked over 40 in a workweek; (3) failing to pay the front-of-the-house plaintiffs an extra hour of pay at the minimum wage rate on days when they worked more than 10 hours; and (4) requiring the front-of-the-house plaintiffs who worked in New York to purchase uniforms for which they should have been reimbursed and paid weekly maintenance.  The plaintiffs maintain that their second-amended complaint alleges that the defendants had a policy or practice of failing to pay the back-of-the-house plaintiffs: (a) minimum wages; (b) overtime compensation for hours worked over 40 in a workweek; and (c) spread-of-hours pay on days when they worked more than 10 hours.  The plaintiffs contend that their amended complaints allege that the defendants are jointly and severally liable for the wage and hour violations because they operated a single integrated enterprise that shared a common management, were controlled and owned centrally, had interrelated operations and exercised control over compensation policies.

According to the plaintiffs, "evidence obtained during discovery supports [the] allegations," and "Mama Mexico's Chief Financial Officer, Laura Chavez, testified that all three Mama Mexico restaurants had the same officers, paid employees the same way, instituted the same time-keeping policies, used the same employee manual, and relied on the same accountant and attorney to provide payroll advice."  The plaintiffs assert that, additionally, "Magistrate Judge Theodore H. Katz granted summary judgment to Plaintiffs against Defendants Piramides Mayas Inc., Shaddai Inc., and Mama Mexico's owner, Juan Rojas Campos," making the following findings: (1) "Mama Mexico had no system for recording the hours that Plaintiffs worked"; (2) "Defendants did not pay Plaintiffs overtime for hours worked over forty"; (3) "defendants did not pay spread-of-hours pay when Plaintiffs worked more than 10 hours in a day"; (4) "Defendants paid Plaintiffs and other tipped food service workers at a flat rate of $184 for working five shifts plus $30 for each additional shift"; (5) "Plaintiffs regularly worked more

than 40 hours a week without being paid overtime and worked days of more than 10 hours

without being paid spread-of-hours pay"; (6) "Plaintiffs purchased uniforms, which included an

apron and bow-tie, and were not reimbursed by Defendants or paid statutory maintenance

amounts"; (7) "Defendants failed to provide notice that they were taking a 'tip credit' pursuant to

29 U.S.C. § 203(m)"; (8) "Defendants' violations of the law were willful"; and (9) "Plaintiffs

were entitled to liquidated damages under both the FLSA and NYLL."

<u>Damages</u>

The plaintiffs contend that damages should be awarded "based on the evidence adduced

in court."   They assert that, at the October 2012 hearing, twenty plaintiffs provided testimony

regarding the hours worked, dates of work, any sick or vacation time they took and the amounts

they paid for uniforms.   The plaintiffs contend that, after the hearing, they "submitted a summary

of testimony, each Plaintiff's damages, including non-testifying Plaintiffs, and the methods by

which the damages were calculated."   According to the plaintiffs, "[b]ased on the evidence at the

hearing," they seek $7,142,163.27 in total damages for 74 plaintiffs.

<u>Attorneys' Fees and Costs</u>

The plaintiffs, represented by the law firms Outten & Golden LLP ("O&G") and Fitapelli

& Schaffer, LLP ("F&S"), seek $331,334.40 in attorneys' fees and $12,721.37, in costs.   In

support of their request, they submitted a declaration by their attorney, Rachel Bien ("Bien"), of

O&G, with: (1) Exhibit 1, "[a] spreadsheet containing an updated summary of Plaintiffs'

counsel's requested attorneys' fees and costs through November 28, 2012"; (2) Exhibit 2,

"Plaintiffs' counsel's contemporaneous time records through November 28, 2012"; and (3)

Exhibit 3, "Plaintiffs' Counsel's Summary of Costs."   The plaintiffs made a motion previously

for an award of $585,239.75 in attorneys' fees and $27,816.74 in costs.   Now, the plaintiffs

request a reduced amount, which includes O&G's "Voluntary reduction of 124 hours, or 7 percent, of their time," as well as a reduction of "their hourly rates below that which they customarily charge paying clients." Moreover, the plaintiffs contend, "[w]ith respect to F&S, Plaintiffs did not include any time for work done after May 2012, including time spent preparing for and attending the damages hearing." The plaintiffs maintain that, "[i]n order to eliminate any possible duplicative or excess time billed, Plaintiffs have taken a further 25 percent across-the-board reduction in [O&G's] hours and have not included any time worked on the case by either firm since November 2012, when Plaintiffs submitted their previous fee request." Additionally, the plaintiffs "further reduced the hourly rates requested by [O&G] to rates that were approved by another court in this district."

In her declaration, Bien states that she graduated from Brooklyn Law School in 2005 and joined O&G in 2006, after serving as a judicial clerk on the Ninth Circuit Court of Appeals. Bien contends that, since she joined O&G, she has been representing plaintiffs in employment litigation and related matters exclusively. Bien is a co-chair of O&G's Class Action Practice Group and a member of various professional organizations. Bien speaks frequently on employment issues, including wage and hours topics.

Bien states that Justin M. Swartz (Swartz") is an O&G partner who graduated with honors from DePaul University School of Law in 1998, and he has focused on employment law exclusively, representing employees. Prior to joining O&G in 2003, Swartz represented workers as an associate at Goodman & Zuchlewski, LLP, in New York, and Stowell & Friedman, Ltd., in Chicago.

Bien asserts that Juno Turner ("Turner") is an O&G associate who graduated magna cum laude from Fordham Law School in 2006. Following a clerkship with a magistrate judge in the

Eastern District of New York, Turner spent two years investigating and prosecuting wage and hour violations on behalf of low-wage workers at the Office of the New York State Attorney General.  Since joining O&G in 2009, Turner has litigated numerous class action wage and hour cases.

According to Bien, Elizabeth Wagoner ("Wagoner") is a former O&G associate who graduated with honors from the University of Texas School of Law in 2007.  Prior to joining O&G, Wagoner represented low wage workers in wage and hour cases for four years at Make The Road New York.

Bien states that Delyanne Barros ("Barros") is an O&G associate who graduated cum laude from Pace University School of Law in 2008.  Barros joined O&G in 2008 and represents employees in litigation and negotiation in all areas of employment law, including individual sexual harassment and discrimination cases and severance and offer letter negotiations.

Bien asserts that Sally Abrahamson ("Abrahamson") is an O&G associate who graduated cum laude from the American University, Washington College of Law in 2009.  Prior to joining O&G in 2012, Abrahamson litigated wage and hour cases at the D.C. Employment Justice Center from July 2011 to September 2012.  She served previously as a judicial clerk to a judge in the Western District of Texas for two years.  At O&G, Abrahamson litigates class action wage and hour cases.

Bien states that Joseph Fitapelli ("Fitapelli") is a partner at F&S, who graduated from New York Law School in 2001.  For the past six years, Fitapelli has litigated dozens of wage and hour class action and collective action cases.  Prior to starting F&S, Fitapelli was employed by Abrams, Gorelick, Friedman & Jacobson, P.C. and Weiner, Millo & Morgan, LLC, civil litigation firms in Manhattan.

Bien contends that Brian Schaffer ("Schaffer") is a partner at F&S, who graduated from New York Law School in 2003.  Schaffer has represented hundreds of workers in wage and hour litigations.  Prior to starting F&S, Schaffer was employed by The Law Firm of Louis Ginsberg, P.C., a firm that specializes in representing individuals in employment law cases.  He was also employed by two civil litigation firms in Manhattan, Freiberg & Peck, LLP and Weiner, Millo & Morgan, LLC.

Bien contends that the plaintiffs made strategic choices to prosecute the case in a way that would minimize costs and fees, and the "Plaintiffs delegated tasks to the lowest-billing professional who could perform the task well whenever possible."  She maintains that, in some instances, "O&G recovers fees at higher than its current hourly rates where it is awarded fees though the common fund approach," and, "[b]ecause of the resources devoted to this case, O&G turned down other class cases from which it might have recovered a multiplier."  The plaintiffs seek $12,721, 37 in costs, including "out-of-pocket expenses for compensation of interpreters, court fees, court reporters, and photocopying."

### Judgment by Default Legal  Standard

"Strong public policy favors resolving disputes on the merits."  American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996).  "[T]he entry of a judgment by default [is a] drastic remed[y], and should be applied only in extreme circumstances."  Independent Prods. Corp. v. Loew's Inc., 283 F.2d 730, 733 (2d Cir. 1960).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed.  R. Civ. P. 55(a).  Where a clerk has entered a party's default, and the plaintiff's claim is not "for a sum certain or a sum that can be made certain by computation, . . . the [plaintiff] must apply to the

court for a default judgment." Fed. R. Civ. P. 55(b).  "[A] party's default is deemed to constitute

a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v.

E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  "Even when a default judgment is

warranted based on a party's failure to defend, the allegations in the complaint with respect to

the amount of the damages are not deemed true.  The district court must instead conduct an

inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais

Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

***Facts Deemed Admitted Based on Well-Pleaded Allegations***

Defendants Plaza Mexico, Inc., Piramides Mayas Inc., Mama Mexico Midtown Realty

LLC, Shaddai Inc., and Mama Mexico Englewood Realty LLC, owned and operated three Mama

Mexico restaurants and employed the plaintiffs and similarly situated employees jointly at all

relevant times.  The three Mama Mexico restaurants were located at: (a) 2672 Broadway, New

York, New York; (b) 214 East 49th Street, New York, New York; and (c) 464 Sylvan Avenue,

Englewood Cliffs, New Jersey.  Each defendant had substantial control over the plaintiffs'

working conditions and the defendants' policies and practices, including those concerning time-

keeping, payroll and allocating tips.  The defendants' operations were interrelated and unified

and the defendants were part of a single enterprise.  All three Mama Mexico restaurants shared a

common management and were centrally controlled by the defendants.

Teresa Lara Benavidez was employed by the defendants as a busser, a tipped food

service worker, at the 2672 Broadway Mama Mexico restaurant, from approximately June 2005

through December 2006, and from approximately June 2007 through May 2009.  Maria De

Lourdes Galvez has been employed by the defendants as a busser at the same Mama Mexico

restaurant location, from approximately May 2007 through the present.  Jaime Huerta was

employed by the defendants as a server, a tipped food service worker, at the same Mama Mexico restaurant location, from approximately October 2006 through October 2007, and from approximately August 2008 through April 2009.  Flora Zurita was employed by the defendants as a server at the same Mama Mexico restaurant location, from approximately October 2008 through April 2009.  Maria De Lourdes Vasconez Alarcon was employed by the defendants as a server at the same Mama Mexico restaurant location, from approximately December 2007, and at the 464 Sylvan Avenue Mama Mexico restaurant, from approximately January 2009 through May 2009.  LeBrarmy Garcia was employed by the defendants as a busser at the 464 Sylvan Avenue Mama Mexico restaurant, from approximately January 2009 through March 2009.  Esteban Nader was employed by the defendants as a runner, a tipped food service worker, at the 214 East 49th Street Mama Mexico restaurant, from approximately April 2007 through August 6, 2009.

Guillermo Paez was employed by the defendants as a cook at the Mama Mexico restaurants located at: (i) 2672 Broadway, from approximately October 2001 through 2005; (ii) 214 East 49th Street, from approximately 2005 through 2008; and (iii) 464 Sylvan Avenue, from approximately 2008 through June 2009.  Emiliano Zapata was employed by the defendants as a dishwasher at the 2672 Broadway Mama Mexico restaurant, from approximately 2007 through April 2009.  Pedro Nasario was employed by the defendants at the 2672 Broadway Mama Mexico restaurant, as a dishwasher, from approximately March 2007 through August 2009, and as a cook, from approximately August 2009 through September 2009.

The defendants did not pay the front-of-the-house plaintiffs the minimum wage, overtime wage and spread-of-hours pay for all the hours the plaintiffs worked each week.  The defendants

did not inform the front-of-the-house plaintiffs of the tipped minimum wage or tip credit provisions of FLSA, NYLL or NJLWCL, and they did not allow the front-of-the-house plaintiffs to retain all the tips earned. The defendants demanded, handled, pooled, counted, distributed, accepted and retained portions of the plaintiffs' tips and redistributed the front-of-the-house plaintiffs' tips to employees in positions that are not entitled to tips, without the front-of-the-house plaintiffs' consent. The defendants failed to keep accurate records of wages or tips earned or hours worked by the front-of-the-house plaintiffs. The defendants made deductions from the front-of-the-house plaintiffs' wages for customer walkouts, breakages and mistakes. The defendants required the front-of-the-house plaintiffs to spend their own money on uniforms and failed to compensate them for maintaining the uniforms they required the front-of-the-house plaintiffs to wear. The defendants did not pay the front-of-the-house plaintiffs the required minimum amount of call-in pay for all days on which the plaintiffs reported for duty. The defendants did not furnish their New York front-of-the-house plaintiffs statements with every payment of wages listing hours worked, rates paid, gross wages and tip allowances claimed as part of their minimum wage rate. The defendants did not post any notices on their premises explaining the minimum wage and other applicable law. On June 12, 2009, Vasconez Alarcon complained to the defendants' Chief Financial Officer, Laura Chavez, that she had not been paid for many hours that she worked. She was dismissed from work by the defendants the following day.

The defendants did not pay the back-of-the-house plaintiffs minimum wages and proper overtime compensation for the hours worked over forty each workweek they worked. The defendants paid the back-of-the-house plaintiffs flat rates for each workweek, regardless of the

number of hours the back-of-the-house plaintiffs worked.  The defendants failed to pay the back-of-the-house New York plaintiffs spread of hours pay, at the minimum wage rate, when they worked days of more than ten hours.  The defendants did not keep accurate records of the wages paid or hours worked by the back-of-the-house plaintiffs.  The defendants were aware or should have been aware that their practices were not in accordance with the law, and they made no good faith effort to comply with FLSA compensation requirements.

### *Damages Hearing*

Twenty plaintiffs testified at the damages hearing, namely: Maria De Lourdes Vasconez Alarcon, Marrleni Garcia Martinez, Esteban Nader, Raul Reyes, Ricardo Diestro, Jose Sergio Hernandez, Marilza Rosario, Martha Salazar, Hector Garcia, Jose Perez Onofre, Sergio Mariano, Guillermo Paez, Ambroncio Romero, Pedro Valle Juarez, Carlos I. Vela, Margarita Montiel, Juan Chino Vital, Nestor Jose Sanchez Solano, Genaro Cueva Aparicio and Luis Antonio Martinez.  The following is a summary of the representative testimony from some of the witnesses employed by the defendants in various positions.  The remaining witnesses provided testimony similar to that summarized below.

Maria De Lourdes Vasconez Alarcon ("Alarcon") testified that she worked as a waitress at the 2672 Broadway Mama Mexico restaurant, from June or July 2006 through January 2009, working two double shifts weekly, two dinner shifts and a lunch shift.  Alarcon was employed as a waitress in the Mama Mexico New Jersey location from January to July or August 2009, working approximately three dinner shifts and one double shift each week.  She testified that she never took any time off from work, because she was afraid that her employment would be terminated if she requested a day off.  Alarcon testified that she was required to wear a uniform

consisting of a tie and an apron with Mama Mexico's logo.  She purchased: (a) approximately five or six ties, each of which cost between $15 and $20; and (b) between 30 and 40 aprons, which cost between $25 and $30 each; she was never reimbursed for these uniform purchases. Alarcon stated that she washed her ties and aprons separately from the rest of her clothing.  She testified that everyone who worked "on the floor" was required to wear uniforms.

Marrleni Garcia Martinez ("Garcia Martinez") testified that she worked as a busgirl at the 2672 Broadway Mama Mexico restaurant, from approximately January 2006 through January 2007, six days per week: three double shifts and three dinner shifts.  Garcia Martinez also worked in the New Jersey Mama Mexico restaurant, from approximately January 2007 through July 2008, where she worked ten shifts weekly.  Garcia Martinez never took any time off from work.  She was required to wear a uniform, which she purchased on her own, paying approximately $10 for an apron and $10 for a tie.  Garcia Martinez was not reimbursed for her uniform purchases and she had to wash her own uniform.  Garcia Martinez testified that the front-of-the-house workers typically worked between five and six days per week at the Broadway restaurant location.  Waiters typically worked two double shifts per week, and bussers typically worked three double shifts per week.  She testified that the New Jersey front-of-the-house workers typically worked five or six days per week and two double shifts each week.  The defendants required the front-of-the-house workers to purchase and maintain their own uniforms, without reimbursing the workers for those expenses.

Esteban Nader ("Nader") testified that he worked as a runner at the East 49th Street Mama Mexico restaurant, from approximately April 2007 through August 2009, working five days per week and sometimes six days in a week.  He typically worked four double shifts and one dinner

shift, totaling approximately 64 hours.  Nader purchased and cleaned his own uniform: eight or nine ties costing approximately $10 each and approximately ten aprons costing $10 to $15 each. He was not reimbursed for the uniform expenditures.  Nader testified that at the East 49th Street location, bussers worked generally a schedule similar to the one he worked, between approximately nine to ten shifts per week and approximately four double shifts weekly.  His co-workers did not request time off from work and the front-of-the-house workers were required to purchase and clean their own uniforms, without being reimbursed for the incurred expense.

Raul Reyes ("Reyes") testified that he worked as a cook at the 2672 Broadway Mama Mexico restaurant, from approximately March 5, 2002, through May 14, 2007, working usually six days per week, with Tuesdays off.  He testified that on Sundays through Thursdays, he worked from approximately 12:00 p.m. to 12:00 a.m., and on Fridays and Saturdays, he worked from 12:00 p.m. to 2:00 a.m.  He took one 15 to 20 minute break each day.  From March 2002 through the beginning of 2006, Reyes was paid a weekly wage of $450, and $500 weekly from the beginning of 2006 through 2007.  Reyes stated that in 2006, he missed three months of work because of an injury.  He testified that most back-of-the-house workers at the Broadway location worked six days per week and, generally, the same number of hours as he worked.  He stated that dishwashers worked approximately the same schedule as the cooks worked.

Ricardo Diestro ("Diestro") testified that he worked as a server at the New Jersey location, from approximately August 2006 through October 2007, three weeks each month, six days per week.  He stated that, one week each month his workweek would consist of five days. Diestro worked approximately three double shifts per week when he worked five days in a week and four double shifts per week when he worked six days in a week, and he usually worked a

17

lunch shift on the other days.  Diestro testified that he took two days off from work because he was sick.  He was required to wear a uniform and, in that regard, he purchased and cleaned two ties and one apron, each of which cost approximately $10.  He was not reimbursed for the expenditures associated with his uniform.

Sergio Mariano ("Mariano") testified that he worked as a dishwasher at the 2672 Broadway Mama Mexico restaurant, from February 2008 through May 2010, working about six days per week, from noon to 3:00 a.m.  He earned approximately $400 weekly.  Mariano missed approximately two days each year from work because he was ill.  He testified that other dishwashers who worked at the 2672 Broadway location worked schedules similar to his and earned approximately $400 weekly.

Guillermo Paez ("Paez") worked as a cook at all three Mama Mexico restaurants, from September or October 2001 through November 2008, working from noon to 12:00 a.m. six days per week.  Paez earned $600 each week initially, and, by 2003, earned $850 weekly.  At the beginning of 2004 he earned $900 weekly and from 2006 until he stopped working at the Mama Mexico restaurants, he earned approximately $1,200 weekly.  Paez testified that approximately sixteen people worked in the kitchen at the 2672 Broadway location with him as dishwashers, food preparers and cooks.  He estimated that most of the back-of-the-house workers worked at least twelve hours each day, six days per week.  He stated that dishwashers worked between 12 and 14 hours per day and food preparers worked approximately 12 hours per day.  Additionally, he stated that cooks at the Broadway location earned generally between $400 and $500 weekly, dishwashers earned between $200 and $329 weekly, and food preparers earned between $280 and $300 weekly.  Paez testified that nine people worked in the kitchen at the East 49th Street

18

location with him, and they worked 12 hours each day, six days per week.  Dishwashers at that location earned $200 to $220 weekly, cooks earned $400 to $500 weekly, and food preparers earned $250 to $300 weekly.  Paez stated that between nine and ten people worked with him in the kitchen at the New Jersey location.  The front-of-the-house workers worked approximately 12 hours per day in New Jersey.  The dishwashers in New Jersey earned between $200 and $220 weekly, food preparers earned between $280 and $300 weekly, and cooks earned between $450 and $500 weekly.

Pedro Valle Juarez ("Valle Juarez") testified that, from October 2001 through July 24, 2008, he worked as a food preparer primarily at the 2672 Broadway Mama Mexico restaurant.  From time-to-time he worked at other Mama Mexico locations.  Valle Juarez worked six days per week, typically from 11:00 a.m. until 12:30 a.m. or 1:00 a.m.  Valle Juarez earned approximately $400 weekly for the first three years, and his pay increased to $440 weekly for another three years, after which it increased to $500 weekly for the remainder of his employment with the Mama Mexico restaurants.  Valle Juarez testified that dishwashers he knew, including his two cousins, earned between $220 and $320 per week.

Margarita Montiel ("Montiel") testified that she worked as a busgirl and bartender at the 2672 Broadway Mama Mexico restaurant, from May 2001 through November 2007.  She worked as a bartender at the New Jersey location, from November 2007 through July 2009 and as a waitress at the East 49th Street location, from July 2009 through November 2009.  In the New York locations, she worked six days per week, four dinner shifts and two double shifts.  In New Jersey, Montiel worked five to six days per week, four dinner shifts and two double shifts.  In January 2007, Montiel took five months off from work because a relative passed away.  She

also took one or two days off from work two or three times during her employment with the Mama Mexico restaurants because of illness.  Montiel testified that she was required to purchase uniforms, which included 21 ties, at $20 each, ten aprons, at $15 each, and ten stars, at $10 each.

Luis Antonio Martinez ("Martinez") testified that he worked as a food preparer at the 2672 Broadway Mama Mexico restaurant, from April 1999 through December 2009, six days per week, 12 hours daily on weekdays and 13 hours each day of a weekend.  Martinez earned $400 weekly initially, and received a raise every two years, earning $450 each week in 2001, $550 weekly in 2003, and $750 weekly at the end of his employment.

### *FLSA, NYLL and NJLWCL Legal Standard*

FLSA

At all times relevant to this action, FLSA provided that employers pay their employees wages not less than: (1) $5.15 an hour beginning September 1, 1997; (2) $5.85 an hour, beginning on the 60th day after May 25, 2007; (3) $6.55 an hour, beginning 12 months after that 60th day; and (4) $7.25 an hour, beginning 24 months after that 60th day.  29 U.S.C. § 206(a).  "'Tipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t).

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to – (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996, and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.  The additional amount on account of tips may not exceed the value of the tips actually received by an employee.  The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to

prohibit the pooling of tips among employees who customarily and regularly receive tips.

     29 U.S.C. § 203(m).

No employer shall employ his employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employers "shall make, keep, and preserve" records "of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them]." 29 U.S.C. § 211(c).

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed [by section 206 or section 207] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

     29 U.S.C. § 216(b).

Under FLSA's statute of limitations, an action "may be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In an FLSA action, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or commission was not a violation of the [FLSA], the court may, in its sound discretion,

award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260. "When a defendant in a suit for lost wages under the FLSA fails to maintain employment records as required by the Act, an employee . . . may submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997)(quotation marks and citation omitted).

New York Law

At all times relevant to this action, New York law provided that "[e]very employer in the restaurant industry shall pay to each employee . . . not less than the minimum wage rate." New York Compilation of Codes, Rules & Regulations ("NYCRR") § 137-1.1.[2]  The basic minimum hourly rate was: (a) $6.75, from January 1, 2006; (b) $7.15, from January 1, 2007 to July 23, 2009; and (c) $7.25, from July 24, 2009 to December 30, 2013.  See NYLL § 652(1); NYCRR § 137-1.2.  "An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek." NYCRR §137-1.3.

> An employee who by request or permission of the employer reports for duty on any day, whether or not assigned to actual work, shall be paid at the applicable minimum wage rate: (1) for at least three hours for one shift, or the number of hours in the regularly scheduled shift, whichever is less; (2) for at least six hours for two shifts totaling six hours or less; or the number of hours in the regularly scheduled shift, whichever is less; and (3) for at least eight hours for three shifts totaling eight hours or less, or the number of hours in the regularly scheduled shift, whichever is less.
>
> NYCRR § 137-1.6.

---

[2] At all times relevant to these actions, Part 137, Restaurant Industry, of Title 12 of NYCRR governed the plaintiffs' New York claims.  Part 137 was repealed, effective January 1, 2011.

"On each day in which the spread of hours exceeds 10, an employee shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required in this Part."  NYCRR § 137-1.7.

> Where an employee purchases a required uniform he shall be reimbursed by the employer for the cost thereof not later than the time of the next payment of wages. Where the employer fails to launder or maintain requited uniforms for any employee, he shall pay such employee in addition to the minimum wage prescribed herein: . . . (c) $8.40 per week on and after January 1, 2006, if the employee works more than 30 hours weekly; . . . (d) $8.90 per week on and after January 1, 2007, if the employee works more than 30 hours weekly; . . . and (e) $9.00 per week on and after July 24, 2009, if the employee works more than 30 hours weekly.

> NYCRR § 137-1.8.

"Every employer shall keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and such other information as the commissioner deems material and necessary."  NYLL § 661; see NYCRR § 137-2.1.  "Every employer covered by this Part shall furnish to each employee a statement with every payment of wages listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages."  NYCRR § 137-2.2.  Every restaurant industry employer "shall post, in a conspicuous place in his or her establishment, a notice issued by the Department of Labor summarizing minimum wage provisions."  NYCRR § 137-2.3.  "Wages shall be subject to no deductions," including deductions for spoilage or breakage or cash shortages or losses, except where authorized by law.  NYCRR § 137-2.5.  "A split shift is a schedule of daily hours in which the working hours required or permitted are not consecutive.  No meal period of one hour or less shall be considered an interruption of consecutive hours."  NYCRR § 137-3.10.  "The spread of hours is the interval between the

beginning and end of an employee's workday.  The spread of hours for any day includes

working time plus time off for meals plus intervals off duty."  NYCRR § 137-3.11.

> If any employee is paid by his employer less than the wage to which he is entitled
> under the provisions of this article, he may recover in a civil action the amount of
> any such underpayments, together with costs and such reasonable attorney's fees as
> may be allowed by the court, and if such underpayment was willful, an additional
> amount as liquidated damages equal to twenty-five percent of the total of such
> underpayments found to be due him . . . . Notwithstanding any other provision of
> law, an action to recover upon a liability imposed by this article must be commenced
> within six years.

> NYLL § 663.

New Jersey Law

At all times relevant to this action, New Jersey law provided that an employer "shall pay

to each of his employees wages at a rate of not less than[,] as of October 1, 2005, $6.15 per hour,

and as of October 1, 2006, $7.15 per hour for 40 hours of working time in any week and 1 ½

times such employee's regular hourly wage for each hour of working time in excess of 40 hours

in any week."  NJLWCL § 34:11-56a4.  "If uniforms are required which are not appropriate for

street wear or use in other establishments, the employer shall pay for the cost of such uniforms."

New Jersey Administrative Code ("NJAC") § 12:56-17.1(c).  "Maintenance and upkeep of

uniforms of kitchen people, cooks, and dishwashers shall be provided and maintained by the

employer."  NJAC § 12:56-17.1(b).

***Collective FLSA Action***

"'Certification' is neither necessary nor sufficient for the existence of a representative

action under FLSA" and, as long as the plaintiffs are similarly situated to the individual

plaintiff(s) who commenced the action, they can opt into the action.  Myers, 624 F.3d at 555.

Based on the entire record in these two actions, the Court finds that all the plaintiffs who have

24

opted into these actions previously are similarly situated to the plaintiffs who commenced the actions, bringing the total number of the plaintiffs in these actions to 74.

***FLSA Statute of Limitations***

Based on the defendants' default and the allegations that: (a) the defendants' conduct was "willful and intentional"; (c) the defendants "were aware of or should have been aware that the practices" asserted in the complaints were unlawful; and (c) the defendants did not make a good faith effort to comply with legal requirements, the Court finds that the defendants' conduct was willful. Accordingly, the FLSA statute of limitations is three years. See 29 U.S.C. § 255(a).

***Application of FLSA, NYLL and NJWLC Legal Standards***

The Court finds that the well-pleaded allegations and the record evidence establish that the defendants willfully violated FLSA, NYLL and NJLWCL when they failed to: (a) pay the plaintiffs the minimum wage rate, overtime compensation for hours worked over 40 in a workweek, spread of hours (an extra hour of pay at the New York minimum wage rate for each day during which the spread of hours exceeded ten hours); (b) reimburse the uniform and uniform maintenance costs incurred by the plaintiffs required to wear uniforms; (c) maintain records, as required by law; and (d) post notices, as required by law. The plaintiffs are entitled to recover the minimum wage not paid to them by the defendants. The front-of-the-house plaintiffs are entitled to recover the full minimum wage, because the defendants did not provide notices to the plaintiffs about the tip credit rate, as required by law. Further, the plaintiffs are entitled to recover unpaid overtime for the hours they worked over 40 in a workweek and, under NYLL, spread-of-hours pay for days of work over ten hours. Those plaintiffs required to wear uniforms shall be reimbursed for the cost of the uniforms and their maintenance. The non-

testifying plaintiffs are entitled to damages based on the representative evidence.  See Reich, 121 F.3d at 66.

The plaintiffs are entitled to recover liquidated damages, as provided by FLSA and NYLL.  Given that the plaintiffs alleged that the defendants did not act in good faith and the defendants defaulted, the "good faith" defense to a liquidated damages award, see 29 U.S.C. § 260, does not bar the award of liquidated damages.  Although courts in this circuit disagree about whether a plaintiff may recover liquidated damages under both FLSA and state law for the same violations, see Zubair v. Entech Eng'g P.C., 900 F. Supp. 2d 355, 361 n.4 (S.D.N.Y. 2012) (noting it is not clear whether the plaintiff could recover under FLSA and state law and citing cases disagree on the issue), the Court agrees with those courts finding that liquidated damages under FLSA and an analogous New York statute serve fundamentally different purposes, namely, FLSA's liquidated damages are "compensatory rather than punitive in nature," Reich, 121 F.3d at 71, while liquidated damages under NYLL "'constitute a penalty' to deter an employer's willful withholding of wages due."  Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted).

***Damages***

The back-of-the-house plaintiffs calculated their damages by determining each plaintiff's regular hourly rate of pay by dividing her weekly wage by the number of hours worked.  Where the resulting hourly rate was equal to or below the applicable minimum wage, the minimum wage rate was used as the basis for determining the overtime compensation rate.  Where the hourly rate exceeded the applicable minimum wage, the actual hourly rate was used as the basis for determining the overtime compensation rate.  The full minimum wage was used to calculate

the front-of-the-house plaintiffs' damages. For all plaintiffs, a "conservative estimate of shifts worked and hours worked each shift was used to generate damages."  The spread of hours damages calculation was done by multiplying the number of days the plaintiffs testified they worked more than 10 hours by the applicable New York minimum wage.  The plaintiffs factored in the time the plaintiffs took off from work in calculating damages.  The cost for the plaintiffs' uniforms was derived by multiplying the average number of aprons and bow ties purchased by the testifying front-of-the-house plaintiffs by $10, the minimum amount paid for each item.  The cost of uniform maintenance was calculated using statutory rates.

The Court approves the plaintiffs' calculation of damages that includes, where applicable, minimum wages, overtime compensation, uniform costs, uniform maintenance costs, FLSA liquidated damages and NYLL liquidated damages.  The Court finds, based on the record evidence, that the plaintiffs[3] established their damages with reasonable certainty, and they are entitled to recover as follows:

| | |
|---|---|
| Maria de Lourdes Vasconez Alarcon | $67,740.80 |
| Marrleni Garcia Martinez | $74,272.80 |
| Esteban Nader | $72,399.28 |
| Raul Reyes Connasco | $87,382.29 |
| Ricardo Diestro | $15,921.90 |
| Jose Sergio Hernandez | $40,334.00 |
| Marilza Rosario | $40,095.33 |
| Martha Salazar | $55,380.00 |
| Hector Garcia | $2,242.33 |
| Jose Perez Onofre | $101,136.76 |
| Sergio Mariano | $126,902.89 |
| Guillermo Paez | $291,534.75 |
| Ambroncio Romero | $215,110.35 |
| Pedro Valle Juarez | $218,710.44 |
| Carlos I. Vela | $89,499.64 |
| Margarita Montiel | $98,677.79 |
| Juan Chino Vital | $5,817.00 |

---

[3]  The full names of the plaintiffs are taken from their opt-in consent forms.

| | |
|---|---|
| Nestor Jose Sanchez Solano | $13,502.29 |
| Genaro Cueva Aparicio | $145,556.75 |
| Luis Antonio Martinez | $238,426.22 |
| Teresa Lara Benavidez | $27,697.90 |
| Monica Castillo | $1,469.10 |
| Liliana Catalan | $105,018.34 |
| Arturo T. Fiorencio | $2,097.40 |
| Cindia Patricia Flores | $4,177.60 |
| Elideth Galvez Diaz | $86,529.55 |
| Maria de Lourdes Galvez | $37,481.60 |
| Marilyn Guaba | $2,044.86 |
| Jamie Huerta | $52,508.86 |
| Cass Isles | $3,842.43 |
| Janet Jimenez | $109,857.90 |
| Rafael Lopez, | $3,353.99 |
| Eduardo Pelaez | $40,524.41 |
| Francisco Perez | $12,428.24 |
| Adriana Reyes Martinez | $24,278.34 |
| Heladio Alvaro Reyes | $28,919.47 |
| Angel Rivera | $10,893.57 |
| Idelfonso Sanchez | $84,763.74 |
| Yovan Valderrabano | $9,810.97 |
| Jannie Velasquez | $10,891.45 |
| Marisol Morales Velez | $81,475.43 |
| Flora Zurita | $17,312.01 |
| Zaid Abdelhady | $2,888.82 |
| Miguel Arias | $7,286.90 |
| Editha Bustamante Calderon | $14,433.82 |
| Julio Calva | $35,874.54 |
| Joseph Daniel Carretta | $10,239.40 |
| Anthoanete Joselinne Guzman | $18,282.14 |
| Evelyn  Hamburger | $9,705.30 |
| Rafael Huerta | $51,471.55 |
| Norberto Mejias Vargas | $3,438.58 |
| Osmin M. Monge | $14,228.74 |
| Teodoberto J. Nunez Morfu | $79,064.26 |
| Elier Rodriguez | $10,270.74 |
| Boris Villacres | $10,860.36 |
| Paula Yepes | $51,880.30 |
| Lebrarmy Garcia | $5,087.86 |
| Eriberto Balbuena | $186,682.41 |
| Ricardo Barrios | $129,529.83 |
| Emiliano Espinoza | $113,333.69 |
| Pablo Hidalgo Valle | $212,680.50 |
| Silbano Lara Baltazar | $93,902.24 |
| Francisco M. Melchor | $152,816.56 |
| Pedro Nasario | $8,546.69 |
| Mario Ortiz Olea | $212,623.01 |

| | |
|---|---|
| Jorge M. Ramon | $10,301.87 |
| Obdulio Rosines Juarez | $208,497.75 |
| Florentino Saldana Navarro | $149,118.45 |
| Christian Vidals | $173,980.62 |
| Jonathan Russo | $611.33 |
| Tomas Lopez Guerra | $3,719.25 |
| Jesus Martinez | $73,970.32 |
| Kevin Santa | $5,794.30 |
| Martina Lopez | $55,860.41 |

***Attorneys' Fees and Costs***

When exercising their discretion to determine the reasonableness of an attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), see Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

> Id. at 186-87 n.3.

A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied.  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

The plaintiffs requested $331,445.40 in attorneys' fees and $12,721.37 in costs.  They provided contemporaneous time records documenting adequately the work performed by each attorney and the expenses incurred in connection with these two actions.  Although the instant actions involve typical unpaid wages and overtime compensation claims under FLSA and state law and they do not include any novel or difficult questions, the time and labor required and the somewhat complicated procedural history make the number of attorneys involved, their hourly rates and the number of hours reasonable.  The plaintiffs reduced the attorneys' fees requested previously by 25% across-the-board, "to eliminate any possible duplicative or excess time billed."  Notwithstanding that the plaintiffs did not explain why they chose a 25% reduction, the Court finds that a 25% reduction is reasonable under the circumstances.  Moreover, the plaintiffs' reduction of the hourly rates requested by O&G's attorneys is reasonable and appropriate.  Accordingly, the plaintiffs are entitled to an award of $331,445.40 in attorneys' fees and $12,721.37 in costs.

***Post-Judgment Interest***

The plaintiffs are entitled to post-judgment interest at the rate authorized by 28 U.S.C. § 1961(a).

***Conclusion***

For the foregoing reasons, the plaintiffs' motion for judgment by default, Docket Entry No. 193, in the case bearing Docket No. 09 Civ. 5076, and Docket Entry No. 117, in the case bearing Docket No. 09 Civ. 9574, is granted.  The plaintiffs are entitled to: (1) an award of damages as indicated above; (2) $331,445.40 in attorneys' fees and $12,721.37 in costs; and

(3) post-judgment interest, pursuant to 28 U.S.C. § 1961(a).  The Clerk of Court is directed to enter judgment and close the instant actions.

Dated: New York, New York                    SO ORDERED:
       March 21, 2014

                                              KEVIN NATHANIEL FOX
                                              UNITED STATES MAGISTRATE JUDGE